JOHN JOHNSON, ADMINISTRATOR, *vs.* THE H. M. BULLARD COMPANY.

Third Judicial District, New Haven, June Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

The only duty which the owner of a motor-truck owes to one to whom he loans it gratuitously to be driven by the borrower in a celebration, is to disclose to him any defects in the truck which would render its intended use dangerous, of which he, the owner, had actual knowledge or notice at the time of the loan; for he cannot be made responsible for negligence upon the theory that although

Johnson *v.* Bullard Co.

he did not in fact know of the defects, he might by the exercise of reasonable care have discovered them, and therefore should be treated as if he had actually known them.

The evidence in the present case reviewed and *held* insufficient to warrant the jury in finding that the defendant, who loaned its motor-truck, had any knowledge of its defects; and therefore that the trial court committed no error in directing a verdict for the defendant.

A person who is invited or permitted by the gratuitous bailee to ride on the truck, can stand in no better position than the borrower with respect to his rights against the bailor.

A trial judge is under no obligation to explain to the jury the reasons which induced him to direct a verdict, although he may prefer to do so to avoid any feeling of arbitrariness the jury might otherwise entertain of his ruling; but such statement is in no proper sense a part of the charge.

Alleged errors in a charge become immaterial if a verdict is properly directed; for the question of the propriety of such direction depends upon the record of the testimony only, and not upon any instructions given to the jury.

Argued June 3d—decided July 20th, 1920.

ACTION to recover damages for personal injuries to the plaintiff's intestate resulting in his death, and alleged to have been caused by the negligence of the defendant, brought to the Superior Court in New Haven County and tried to the jury before *Webb, J.;* the trial court directed a verdict for the defendant, and from the judgment thereon the plaintiff appealed. *No error.*

*Charles S. Hamilton,* with whom was *Jacob P. Good-hart,* for the appellant (plaintiff).

*Frederick H. Wiggin* and *J. Dwight Dana,* for the appellee (defendant).

GAGER, J. This is an action to recover damages for death caused by the overturning of the body of a motor-truck owned by the defendant, at the time being used under a gratuitous loan. The only negligence charged is that the body of the truck was defective, rotten, and

unfit for use. This truck, loaded with twelve to fifteen young men, was being driven at a reasonable speed and with due care around a street corner. By reason of the claimed defective condition of the stringers by which the body of the truck was attached to the chassis and the claimed defective method of attachment, the body broke from the chassis, became detached, slid off, and overturned and caused the death of plaintiff's intestate, one of the men riding on the truck. The court directed a verdict for the defendant, and from the judgment entered thereon the plaintiff appeals. The further facts appear in the course of the discussion.

A primary question in this case is the determination of the relation in which the plaintiff's intestate stood to the defendant, Bullard Company, owner of the truck, and the answer to that question will direct us to the ascertainment of the duty which the defendant owed to the deceased, and whether or not the defendant negligently violated that duty. There is very little dispute between the parties as to what the actual facts were, and this is especially true as to those facts which determine the relationship of the deceased to the defendant.

Directing attention first to the facts determining relationship, the record would have justified the jury in finding, as the facts most favorable to the plaintiff, that on November 16th, 1918, the defendant, a furniture dealer in New Haven, owned and was using a Pierce-Arrow two-ton motor delivery truck, and had owned and used this truck for about one month. One Lewis was the regular driver of this truck for the defendant, and one Limbacher at that time had charge and supervision of the defendant's trucks and of their use. A celebration of Armistice Day was held on November 16th. After the parade in the afternoon, Lewis used this truck for the delivery of furniture

or stoves for the defendant until six o'clock, the regular time for stopping work. He then put up the truck in the garage used by the defendant for its storage, and went to his home. After changing his clothes and having his supper, Lewis called up Limbacher by telephone and asked if he, Lewis, could take the motor-truck for the evening, as he wanted to take some fellows out to ride. Limbacher gave Lewis permission to take the truck for this purpose, provided the truck should be in by ten o'clock. Thereupon Lewis and a friend of his started out with the truck from the garage, and after proceeding a few blocks picked up two or more other friends. These friends were seated with Lewis on the driver's seat. After driving through some other streets he came to a corner where a number of young men were standing, one of whom was the plaintiff's intestate. These men had ridden in this truck early in the afternoon in connection with the parade. Some one upon the truck, apparently not Lewis, called out to these young men and asked them if they didn't want to take a ride. Immediately eight or ten young men, including the deceased, jumped into the body of the truck. Whether Lewis called to the young men or not, he made no objection and waited for them to get on board, and then proceeded upon the drive which later resulted in the death of plaintiff's intestate. The body of the truck was that of an ordinary delivery truck and was not fitted with seats for the transportation of passengers.

The authority of Limbacher to grant this permission to Lewis, was not discussed in the argument as not being deemed by the defendant essential to the proper disposition of the case, and we will assume, without deciding, that Limbacher was acting within the scope of his authority in giving Lewis permission to take the car for the purpose specified,

The legal relationship created between the defendant and Lewis was, upon the foregoing facts, one of bailment, and was a gratuitous loan for use, the defendant being the lender and bailor, and Lewis the borrower and bailee. It was that class of bailments known in the books as *commodatum.* "Where property is loaned gratuitously by the owner for the sole benefit, accommodation and use of the borrower, and the specific thing loaned is to be returned, a gratuitous bailment relation is created, which may be called a commodate, from the Roman commodatum, a similar relation." 4 Elliott on Contracts, § 3022. See Schouler on Bailments & Carriers (3d Ed.) §§ 65, 66; Dobie on Bailments & Carriers, § 32. By the terms of the relationship all idea of agency is excluded, and it matters not that the bailee may at other times and for other purposes be the servant or agent of the bailor. The plaintiff's intestate, riding in the truck at the invitation, or, at least, the permission of Lewis, can stand in no better position than Lewis did with respect to his rights against the bailor. He is but a sharer with Lewis in the permissive use for which the truck was borrowed. *MacCarthy* v. *Young* (1861), 6 Hurl. & Nor. 329, 158 English Rep. 136; *Coughlin* v. *Gillison* (1899), L. R. 1 Q. B. D. 145. The discussion will therefore proceed upon the same line as if the bailee, Lewis, had himself been injured by reason of the same defect which caused the death in question.

Having determined the true relationship as above, we are in a position to ascertain the duty of the gratuitous bailor for use, with reference to notifying the bailee of any defect of importance in the article bailed, considering the purpose of the bailment. Perhaps the leading case is *Blakemore* v. *Bristol & Exeter Ry. Co.* (1858), 8 El. & Bl. 1035. Coleridge, J., after remarking how little authority was to be found in the books upon

the obligation which the mere lender of a chattel for use contracts toward the borrower, and referring to Pothier and to Story, proceeds as follows (p. 1050): "It may, however, we think, be safely laid down that the duties of the borrower and lender are in some degree correlative. The lender must be taken to lend for the purpose of a beneficial use by the borrower; the borrower therefore is not responsible for reasonable wear and tear; but he is for negligence, for misuse, for gross want of skill in the use; above all, for anything which may be qualified as legal fraud. So, on the other hand, as the lender lends for beneficial use, he must be responsible for defects in the chattel, with reference to the use for which he knows the loan is accepted, of which he is aware, and owing to which directly the borrower is injured." Upon the principle thus announced the subsequent cases have been decided. In *MacCarthy* v. *Young*, 6 Hurl. & Nor. 329, 158 English Rep. 136, and *Coughlin* v. *Gillison*, L. R. 1 Q. B. D. 145, which latter was the case of a loan of a donkey-engine, the *Blakemore* case was cited and approved as a correct statement of the law. In the *Coughlin* case the court, Collins, L. J., said (p. 149): "Here the engine was not in any sense used upon the invitation of the defendants or in their interest. What, then, is the duty of a lender in such a case? The principle is laid down very clearly in *Blakemore* v. *Bristol & Exeter Ry. Co., supra,* and *MacCarthy* v. *Young, supra.* It is his duty to indicate to the borrower defects in the article lent of which he is aware, and if either deliberately or by gross negligence he does not discharge this duty, he is liable for injury resulting to the borrower. That, in my opinion, is the limit of his liability."

The leading American case appears to be *Gagnon* v. *Dana,* 69 N. H. 264, 39 Atl. 982, 41 L. R. A. 389, 76

Amer. St. Rep. 170, decided in 1898. The defendants there loaned wall brackets to a carpenter engaged in repair work; the plaintiff, an employee of the carpenter, fell from a staging in the construction of which these brackets were used, and the staging fell because of the fact that one of the brackets was defective. The plaintiff was injured and sued the lender of the brackets. The trial court instructed the jury that the defendants could not be liable for plaintiff's injuries unless they knew or ought to have known that the brackets furnished were unsafe and unsuitable for use on the building. The court distinguished the case of a gratuitous bailment from a bailment for hire, and held that the charge was injurious in that it imposed a higher degree of care than is imposed upon a gratuitous bailor. The language of the court was as follows (p. 266): "The brackets having been loaned by the defendants for the use of the borrower, without any reward or compensation to be received by them from him, their only duty in respect of defects was to inform him of any of which they were aware, and which make the use of the loan perilous to him or to his servants, one of whom was the plaintiff. 'The ground of this obligation is that when a person lends he ought to confer a benefit, and not to do a mischief.' Shirley's Leading Cases, 43, 44, and authorities generally. But the obligation of a mere lender goes no further than this, and he cannot, therefore, be made liable for not communicating anything which he did not in fact know, whether he ought to have known it or not." The court then cites the *Blakemore* and *MacCarthy* cases noted above; Shearman & Redfield on Negligence (3d Ed.) § 197 and note; Schouler on Bailments & Carriers (3d Ed.) § 79; Story on Bailments (9th Ed.) § 275. The cases we have mentioned are collected in the note in 12 L. R. A. (N. S.) 632, and 6 Corpus Juris, p. 1117, and appear to

be all of the cases of any note bearing upon this specific point. See, also, Beven, Negligence in Law (3d Ed., Vol. 2) p. 775; 3 R. C. L. p. 138, § 61.

From all this it clearly appears that the duty of the defendant to the borrower, Lewis, and so to the plaintiff's intestate, was to disclose any defect of which it was aware which might make the loan perilous to Lewis or those whom he invited or allowed to ride with him. The duty went no further than this, and the defendant cannot be made liable for not communicating anything it did not in fact know, whether it ought to have known it or not. Citing again from *Gagnon* v. *Dana*, 69 N. H. 264, the court there said (p. 267): "It would be the greatest injustice, as well as extending the law beyond any recognized principle, to subject him [a defendant] to liability for defects of which he is not aware; and especially in a case like this, where the defect complained of was apparently as open to ascertainment by the plaintiff as it could possibly have been to the defendants."

The jury might reasonably have found that the accident was due alone to the defective condition of the two stringers by which the body was attached to the chassis of the truck, and an inadequate and insecure method of attachment which rendered the truck dangerous for the use for which it was loaned, and that therefore notice should have been given to Lewis of the defect at the time of the loan if the defendant actually knew of such defect. If the defendant itself did not have actual notice, it is not liable for failure to give notice. If, however, the defects are open and patent to the bailee, or he in fact had adequate knowledge and information of them, there is no duty to notify him because such notice would be quite unnecessary for his protection. The point is that the lender, though acting gratuitously, must not knowingly set a trap

for an innocent borrower. 4 Elliott on Contracts, § 2999.

The jury must in fact have found that the defendant gave no notice of any defect to Lewis when he borrowed the truck, and might have found that the defect was not open and patent to Lewis, and that he had no notice in fact. This brings us to the question of fact whether the defendant did at the time of the loan know of the defect or defects causing the accident. It was the duty of the plaintiff to prove such facts as would justify the jury, under the rule as to preponderance of evidence, in finding such knowledge as an actual fact. We do not think there was evidence upon this point sufficient to go to the jury; that in fact the plaintiff wholly failed to make out such knowledge.

The jury might have found that the defendant, about the middle of October, 1918, purchased of the Pierce-Arrow agency a chassis consisting of a motor, cab, frame and four wheels, but without any body, to be used for a motor-truck. A body had been ordered from a third party, but was not completed. The agency had a second-hand body which, by agreement, was loaned by it to the defendant to be used until the new body was completed. This loaned body was taken from a second-hand truck bought by the agency the June or July before. This second-hand truck had been used from June until October in the business of the agency as an emergency truck. The body was by the agency taken from the second-hand truck in its yard, attached to defendant's new truck, and delivered to the defendant between October 15th and October 20th. The agency had the sole direction of the method by which the body was attached to the chassis, and the body was fastened to the chassis in the manner usual in Pierce-Arrow trucks. The wood in the stringers showed exposure to the weather, was weather-checked and parts were

dry-rotted and had lost a considerable percentage of normal strength, one half to three quarters. The condition of the stringers was shown by the examination of portions after they had been split in the accident. There was no testimony that any defect in the wood of the stringers would have been ordinarily observable before the accident, except certain weather-checks produced by changes in the temperature, and that the stringers had been used and were weather-worn, but it did not appear whether the attention of the defendant or any of its agents had been called even to this condition. It did not appear that Lewis, who had driven the truck for a month, or Limbacher, the man in general charge of the trucks, had, prior to the accident, ever noticed anything defective about the body. They did know it was an old or second-hand body. It does not appear whether the body was ever seen by any one representing the defendant until the truck with the body on it was delivered. The truck as delivered by the vendor was in constant use without accident or discovered defect by the defendant, or any one representing it, down to six o'clock on the day of the accident. It must all the time be borne in mind that with respect to the discharge of any duty by the defendant, this knowledge must have existed on or prior to the time that the truck was loaned. We fully agree with the court that, construing these facts most favorably, there is nothing from which the jury would have been justified in finding actual notice, at the time of the loan, of any defect which would render the truck dangerous to operate in the transportation of persons. All that was known by the defendant appears to have been that the truck had a second-hand body put on by the vendor for temporary use. These facts fall far short of justifying an inference of the fact of actual knowledge.

Perhaps here we should note that a large amount of testimony was put in which related only to the condition of the stringers and method of attachment to the chassis, obtained by a careful examination after the body, which overturned, had been taken to the garage of the selling agency. This was entirely relevant to the question of the safety or danger of the truck as a matter of fact. But the decisive question was what the defendant in fact knew at the time of the loan. The only possible relevancy of testimony as to condition after the accident to this question, was that it might show such an observable condition of facts as to lay a legitimate foundation for an inference of fact of actual knowledge on the part of the defendant. A careful examination of all this testimony shows it was quite inadequate for such purpose.

An examination of the plaintiff's requests to charge, and his brief, shows that the plaintiff's vital mistake was as to the extent of the duty owed by the defendant to the decedent, and he assumes a duty to make an examination of the truck before making the gratuitous loan, or a duty to know what the actual condition of the truck was. Repeatedly the plaintiff asserts that the defendant is liable not only on the ground that it knew and did not communicate the danger, but—and this appears to be the burden of his claim—upon the further ground that by the exercise of reasonable care the defendant might and should have known, and is therefore chargeable with negligence as though he had in fact known. That this latter proposition is not the law in the case of gratuitous loan for use, is clearly shown by the cases we have cited. This point is particularly discussed in *Gagnon* v. *Dana*, 69 N. H. 264.

The court, in connection with the direction of the verdict, took occasion to explain to the jury at some length the reasons that led it to take such action.

Where a case involves the application of some legal principles that might not be obvious to the jury, it may in some cases, as a matter of practical expediency and to obviate any feeling of arbitrariness on the part of the judge which the jury might otherwise entertain, be of advantage to state the reasons leading to the direction of the verdict; but such statement of reasons is in no proper sense a charge, and is not necessary. The jury are not to apply such reasons of law to the facts and reach their own conclusions. The court has reached the conclusion independently of the aid of the jury; the jury has no use for any statement of principles of law; and the direction of the verdict is the only essential feature. It follows that the reasons which lead the court to its conclusion, whether right or wrong, are immaterial, and not any basis of appeal. In *Dawson v. Orange*, 78 Conn. 96, 128, 61 Atl. 101, where the court, as here, had stated its reasoning at length and then directed a verdict, this court said: "The only part of the charge, indeed, the correctness of which is of any materiality, is the final direction to return a verdict for the plaintiff. It was unnecessary to explain to them [the jury] the reasons why the direction was given." So here, if on the record the action of the court in directing a verdict, for whatever reasons may have been satisfactory to the court, was justified by the record, as we think it was, it is quite unnecessary to examine the numerous reasons of appeal based upon alleged errors in the charge. In this case the counsel took the entire statement of the court to the jury, divided it into paragraphs, and made each paragraph a ground of error.

What we have said with reference to the appeal from the charge also applies with equal force to the alleged errors in reference to the requests to charge.

The motion to correct the finding is to be disregarded

for the same reason. The one issue here is the correctness of the direction, and that is to be determined on the record of the testimony only and not by any claims of counsel as to the law which should have been given to the jury for its instruction, for no such instruction was necessary or could have been of legal use.

The plaintiff based several grounds of appeal upon alleged errors in rulings upon the admission of testimony. They are not material. Had the rulings made been the other way, we cannot see that the answers could in any degree have affected the conclusion upon any correct view of the real issues before the jury.

There is no error.

In this opinion the other judges concurred.