[Civ. No. 6327. First Appellate District, Division Two.—June 11, 1928.]

HENRY HARVEY et al., Respondents, v. SAN DIEGO ELECTRIC RAILWAY COMPANY (a Corporation), Appellant.

488

Sweet, Stearns & Forward and Elwin L. Eckert for Appellant.

Alfred T. Roark for Respondents.

STURTEVANT, J.—The defendant is the owner and operator of a street railway in San Diego. The cars are operated by electricity, which is conducted by an overhead trolley and the trolley is supported by poles located on the opposite sides of the streets, including, among others, Broadway. Prior to the eleventh day of February, 1925, the defendant used wooden poles to support the wires. About that time it had commenced to substitute metal poles and to take out the wooden poles. Broadway runs east and west. State Street intersects Broadway and runs north and south. On the afternoon of February 11, 1925, at about 3 o'clock the defendant was engaged in removing a wooden pole at the northeast corner of Broadway and State Street. For that purpose it used a truck having attached to it a derrick not unlike a steam shovel excepting that the truck derrick had no shovel attached, but did have appliances for attaching to the wooden poles and lifting and pulling the poles. The truck was backed toward the pole at the corner of Broadway and State, but was located on the north line of Broadway from 8 to 15 feet east of the pole which the defendant's servants were engaged in pulling. The plaintiffs, together with some guests, drove north on State Street and when they noticed a mail-box at the corner of Broadway and State, Mr. Harvey stopped his automobile on the east side of State Street and north of Broadway. The automobile was therefore slightly around the corner from the derrick truck. The corner was built up and was occupied by the Federal Drug-store. Mrs. Harvey stepped out of the automobile and returned to the mail-box. As she did so her hand was crushed and bruised by falling missiles. It later was learned that the defendant's apparatus broke and a part fell on the lamp-post, causing metal and glass

to fall on Mrs. Harvey's hand. This action was commenced to recover damages for the injuries sustained. The defendant answered and a trial was had before the trial court sitting with a jury. The jury returned a verdict in favor of the plaintiff and the defendant has appealed under section 953a of the Code of Civil Procedure.

■ Claiming that the doctrine of *res ipsa loquitur* applied to the facts, the plaintiffs introduced their case accordingly. In the trial court the defendant made no objection to the procedure and we do not understand that it makes any objection to that procedure in this court. However, it claims that certain rules of law governing the application of the doctrine of *res ipsa loquitur* were departed from to the prejudice of the defendant. The first point made in this behalf is that the trial court improperly refused one of its instructions worded as follows: "You are further instructed that plaintiffs do not here complain that the servants of the defendant were incompetent or inexperienced, and the only question for you to consider with reference to them is whether on the occasion of the accident they acted with the care and prudence which reasonably prudent men under the circumstances would have exercised." As we understand the defendant, it contends that the proposed instruction was to the effect that the issue before the court was whether the defendant, at the time and place alleged in the pleadings, acted with due care. Conceding such to have been the meaning of the instruction, the court did not err in not giving it for the reason that it most carefully and fully instructed the jury on that subject and moreover it confined its instructions to that subject. However, the proposed instruction was so worded as to advise the jury that due care under the circumstances of this case was reasonable or ordinary care. Such is not the law. In *Knott* v. *McGilvray*, 124 Cal. 128, 131 [56 Pac. 789, 790], the court quoted with approval: "Respondent's evidence also established a *prima facie* case of negligence upon the part of the appellant. He was engaged with tools and materials directly over a thoroughfare where people were constantly traveling and had an undoubted right to travel. Under such circumstances, the law demanded of him more than ordinary care. He was called upon to exercise the greatest care and caution

in the performance of his work, in order that travelers might not be injured.''

■ The defendant requested and the trial court refused to give an instruction worded as follows: "You are further instructed that latent defects which are concealed in defective workmanship of a reputable manufacturer, are among the casualties which no man can avoid without that extraordinary care and vigilance which the law does not impose. If you believe from the evidence that the 'bull-ring' on the derrick-truck, the breaking of which caused the injury to the plaintiff, was purchased from a reputable manufacturer, and gave no indication of being unsafe up to the time of the accident testified to, and if you find from the evidence that the defect in said bull-ring was screened and unknown to defendant, and by the exercise of ordinary care could not have become known to defendant, then your verdict must be for defendant.'' The instruction was clearly incorrect as stating that defendant was not liable if it used "ordinary care" under the circumstances. (*Knott* v. *McGilvray, supra.*)

■ The defendant requested and, after adding the last two words, the trial court gave an instruction as follows: "You are further instructed that a person is not liable for damages incurred through latent defects in machinery which could not have been discovered by examination or tests.'' The defendant argues that the instruction as given was to the effect "that if the defect in the bull-ring could have been ascertained by any test, whether reasonable or unreasonable, practicable or impracticable, defendant was liable in damages for not discovering the flaw.'' The attack is wholly without merit. The same attack could have been addressed to the instruction as tendered by the defendant as well as to the instruction as modified and given by the trial court. The trial court in other instructions most carefully instructed on the degree of care. Reading the instructions together, there was no room whatever for the attack made by the defendant.

■ The trial court instructed the jury as follows: "You are instructed that where a party or corporation is engaged with tools and materials directly over the thoroughfare where people are constantly traveling and have an undoubted right to travel, under such circumstances the law

demands of such party or corporation more than ordinary care. Such party or corporation is bound, under such circumstances, to exercise the greatest care and caution in the performance of his work in order that travelers may not be injured.'' The defendant asserts that the instruction should not have been given because the derrick did not extend over the entire sidewalk but in part extended over the street and therefore that it did not extend ''over the thoroughfare where people are constantly passing and have the undoubted right to pass.'' To state the argument is to answer it.

The court instructed the jury as follows: ''You are further instructed that if, in your judgment, based upon the evidence in this case, it is shown that the instrumentality causing the injury to plaintiff, if any, was under the management and control of the defendant, San Diego Electric Railway Company, a corporation, and that the accident was such as in the ordinary course of things does not happen, in the absence of explanation of said defendant the *law presumes* that the accident and injury to plaintiff arose from the lack of care on the part of said defendant.'' (Italics defendant's.) Both in the trial court and in this court the defendant has made the contention that the instruction was erroneous. (*Davis* v. *Hearst*, 160 Cal. 143 [116 Pac. 530]; *Albert* v. *McKay & Co.*, 53 Cal. App. 325 [200 Pac. 83].) Conceding that the instruction, if standing alone, would be erroneous, the slight error was cured in this particular case by the other instructions which were given by the court. When the point was called to the attention of the trial court on a motion for a new trial, the learned trial judge replied as follows: ''I doubt very much whether I ever gave a set of instructions that there was no error in. The question arises whether or not, if there were any errors, *were they prejudicial errors?* I can't think for a moment that the court would hold that *it was prejudicial error* to use 'presumption' instead of 'inference.' The average juror, I think, wouldn't be expected to distinguish between the two. In the ordinary use of the word, outside of court, I think there is very little distinction between 'presumption' and 'inference.' '' (Italics ours.) It is sufficient to state that we fully concur in that comment as applicable to the facts of this case.

After the plaintiffs had rested the defendant took up the proof and proceeded to introduce evidence showing exactly how the accident happened. In doing so it called an outsider as an expert witness. It also called three of its employees who were operating the derrick truck when the accident happened. In this manner the defendant introduced evidence tending to prove a bull-ring was used on the derrick truck. That the bull-ring had been purchased from a reputable house and that the defendant had not noticed any defect therein. In this behalf the defendant contends that it had made a careful examination. However, an examination of the record does not sustain the defendant in this contention. Some of its employees testified that they had examined the truck, had seen it, had oiled certain parts, etc., but no single witness testified that he had personally examined the ring for the purpose of locating defects, if any, therein. After the above evidence had been given by the defendant's witnesses, the plaintiffs did not call any witnesses in rebuttal. Both in the trial court and in this court the defendant earnestly contended that it had met the burden resting on it to explain how the accident happened and to show that it had not been guilty of any negligence. The point is not a new one. In the recent case, *Michener* v. *Hutton*, 203 Cal. 604 [59 A. L. R. 480, 265 Pac. 238], the court said: "In view of the authorities, the implied finding of the jury that the appellants had failed in their attempt to rebut the inference of negligence created by the application of said maxim cannot be said to be without support in the evidence. And this despite the uncontradicted testimony of the appellant Goekler tending to show that the top length of pipe as placed and secured by him could not have fallen upon the respondent. For, as stated in *Quock Ting* v. *United States*, 140 U. S. 417, 420 [35 L. Ed. 501, 11 Sup. Ct. Rep. 733, 734, see, also, Rose's U. S. Notes], 'Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by anyone, should control the decision of the court; but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse

testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story. His manner, too, of testifying may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given to his statements, although there be no adverse verbal testimony adduced.' '' Further authorities regarding the conclusiveness of the testimony of the defendant's employees will be found collected in 8 A. L. R. 814–828. As to the conclusiveness of the testimony of the expert, see *Spencer* v. *Collins,* 156 Cal. 298, 306, 307 [20 Ann. Cas. 49, 104 Pac. 320]. Bearing these authorities in mind, it follows that the trial court did not err in denying defendant's motion for a directed verdict; nor in denying its motion for judgment notwithstanding the verdict; nor in denying defendant's motion for a new trial. Moreover, it is clear that it cannot be said that the evidence is insufficient to sustain the verdict, or that the verdict is against law.

Finally, it is contended by the defendant that the evidence affirmatively shows that Mrs. Harvey was guilty of contributory negligence. The defendant cites certain passages and specially calls them to our attention, but it does not show wherein Mrs. Harvey was guilty of contributory negligence. No diagrams are before us, but the record shows that when Mrs. Harvey stepped out of the automobile and returned to the mail-box the truck-derrick was around the corner and not necessarily within her vision. She testified that she did not see the truck until after the accident happened. There was nothing improbable in this testimony. The implied finding of the jury is to the effect that the jury believed her. There is not a particle of evidence in the record that Mrs. Harvey could have known that the defendant's agents were in the very act of pulling on the pole at the instant that she approached the mail-box, nor that she should have seen or known that the defendant had its appliances attached to the pole.

We find no error in the record. The judgment is affirmed.

Koford, P. J., and Nourse, J., concurred.