[Civ. No. 11518.   First Dist., Div. Two.—May 7, 1941.]

HILDA HEIDE HARRIS et al., Respondents, v. AMELIA L. SMITH, Appellant.

George M. Naus and Donald Seibert for Appellant.

Letitia R. Farber and Gardiner Johnson for Respondents.

NOURSE, P. J.—In a trial by the court without a jury the plaintiffs had a judgment for $1500, in addition to special damages, for injuries incurred by Hilda Harris when she fell upon the floor of an elevator operated by defendant Smith. The appeal is taken by this defendant alone.

The facts are without material dispute and are fairly stated by respondents as follows:

"Between 5:30 and 6:00 o'clock P. M. on Tuesday, March 14, 1939, the respondents, husband and wife, desiring to rent an apartment, called on appellant, who operated an apartment house, to look at an apartment which was for rent and which the husband had seen earlier in the afternoon. They met the appellant in the lobby which was heavily carpeted and over which the three approached the elevator for the purpose of being carried to an upper floor on which the apartment was located. The appellant summoned the elevator, opened the door thereof, and stepped back to one side to enable respondents to enter. The elevator floor was covered with linoleum which had been waxed and polished by a new employee on Saturday, the 11th, three days prior to the accident. The elevator was lighted with a 25 watt electric light placed in a globe and set high in the dome of the elevator. The floor of the elevator was even with that of the lobby. The moment the door was opened the respondent, Hilda Heide Harris, stepped at once from the said heavily carpeted lobby floor onto the said waxed and polished linoleum floor of the elevator, taking a normal step with her right foot. She wore walking shoes with rubber tipped heels. Upon so stepping in and upon said floor her right foot shot out from under her and she skidded diagonally across the cage and crashed her knee against the metal on the far side of the cage and sustained injury."

The trial court found: "That the said floor of said elevator was then and there on said 14th day of March, 1939, covered by linoleum, of the kind commonly known as battleship linoleum; that the surface thereof was waxed and polished; that said surface was left bare and without any covering up to and including the said 14th day of March, 1939; that no rubber or leather mat or carpet or any other form of safety appliance or application, was superimposed upon said waxed and polished linoleum for the purpose of preventing passengers from slipping and falling thereon; that rubber and

leather mats and other appliances have been devised and used upon linoleum and other coverings of elevator floors and that the use of same affords a greater degree of safety to passengers in such elevators in preventing them from slipping and falling on such floors."

■ Ample evidence was offered to support the finding, and evidence was also offered to show that the elevator was poorly and improperly lighted, and that the linoleum floor had been polished with a dry paste wax, which was more dangerous than the liquid wax, lacquer or shellac which is commonly used because less slippery. There is no dispute in the evidence that the appellant was familiar with the condition of the elevator floor, and it must be conceded that its dangerous condition was not known to respondents and could not have been observed by them with use of ordinary care. These facts follow from the evidence that appellant was in possession, knew that the floor of the elevator was waxed a few days before the accident, had frequently used it since the floor was polished, and the condition of the floor was such that the danger was not apparent. All these circumstances support the finding that the respondents were free from contributory negligence.

■ Much of the argument in the briefs relates to the degree of care required of the owner or tenant in the operation of an elevator for purposes of showing rooms to a prospective tenant. The trial court found that in the operation and maintenance of said elevator the defendant was required to use the highest degree of care and that she was negligent in this instance for having failed to exercise such degree of care. The appellant attacks this finding and argues that, since the respondents had not rented an apartment in the premises and were not "paying guests" at the time of the accident, the appellant owed them no more than ordinary care. The finding and conclusions of the trial court were concededly based upon the ruling in *Parker* v. *Manchester Hotel Co.*, 29 Cal. App. (2d) 446, 454 [85 Pac. (2d) 152], where it was said: "There is no question about the rule in California that the owner of an elevator is responsible for injury occasioned by the slightest neglect which human care and foresight might have guarded, and that, though not insurers of the absolute safety of passengers, they are bound to utmost care and diligence of very cautious persons."

But the appellant criticizes the application of this rule to the facts of the instant case because the respondent injured was not a paying passenger and because the elevator was not in motion at the time of her injury. The respondents contemplated the renting of an apartment from the appellant, who, at the time of the accident, was availing herself of the opportunity of showing the apartment for the purpose of rental. This would seem to be a sufficient "reward" under the meaning of section 2100 of the Civil Code which provides that a carrier for reward must use the utmost care for their safe carriage.

We find no authority holding that an elevator must be moving in order that this degree of care should be applied. The cases cited by appellant relating to the degree of care required of railways in the maintenance of passenger stations and platforms are not helpful. More closely in point are those cases which might be cited relating to the maintenance of car steps, aisles, and equipment. Here the respondent injured was a passenger as soon as she entered the elevator, which was not the case in many of the platform cases cited.

But, if the trial court were in error in imposing too high a degree of care upon the appellant, the judgment must nevertheless be affirmed in view of the settled rule of liability between owner and invitee—and that respondents herein were invitees is not open to controversy. This rule is stated in 20 Ruling Case Law, pages 56 and 57 as follows: "The law is well settled that an owner or occupant of land who by invitation, express or implied, induces or leads others to go upon premises for any lawful purpose is liable for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them. . . . The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted. . . . And, hence, there is no liability for injuries from dangers that are obvious, or as well known to the person injured as to the owner or occupant." California cases in accord with this rule are *Mautino* v. *Sutter Hospital Assn.*, 211 Cal. 556, 560 [296 Pac. 76] , *Shanley* v. *American Olive*

*Co.*, 185 Cal. 552, 555 [197 Pac. 793] , *Blodgett* v. *B. H. Dyas Co.*, 4 Cal. (2d) 511, 512 [50 Pac. (2d) 801] , *Alexander* v. *Wong Yick*, 25 Cal. App. (2d) 265, 267 [77 Pac. (2d) 476] , *Kessler* v. *Cudahy Packing Co.*, 38 Cal. App. (2d) 607, 608, 609 [102 Pac. (2d 362], and *Morton* v. *Manhattan Lunch Co.*, 41 Cal. App. (2d) 70 [106 Pac. (2d) 212].

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 30, 1941.