[Civ. No. 23862. Second Dist., Div. Two. Oct. 29, 1959.]

VICTOR TIERSTEIN, Appellant, v. LOUIS LICHT et al., Respondents.

Wiseman & Elmore and Oscar Z. Wiseman for Appellant.

Schell, Delamer & Loring and Fred B. Belanger for Respondents.

HERNDON, J.—Plaintiff appeals from a judgment of nonsuit rendered in a personal injury action. Plaintiff was injured while assisting defendant Licht in an attempt to load a horse owned by Licht into a trailer furnished by defendant Lightman. The accident resulted from the failure of a tie loop or cleat which was an appliance or part of the trailer designed to facilitate the use of ropes in securing animals in the process of loading and in transportation.

Our summary of the evidence herein will be governed by the familiar rule applicable to the review of a judgment of nonsuit. (*Lashley* v. *Koerber*, 26 Cal.2d 83, 84-85 [156 P.2d 441]; *Rae* v. *California Equipment Co.*, 12 Cal.2d 563, 569 [86 P.2d 352].)

Plaintiff is a licensed Doctor of Veterinary Medicine. On April 27, 1956, at the request of defendant Licht, plaintiff went to Licht's home to treat a lame horse. While plaintiff was on the premises for the indicated purpose, Licht requested his assistance in loading another horse into a trailer. In the course of the loading process, the horse moved back a step or two, placing tension on a rope and chain which had been affixed to the tie loop. The tie loop broke, releasing the rope and chain which recoiled in such a manner as to catch plaintiff's finger and sever the end of it.

It further appeared that the trailer was owned by defendant Lightman, who had loaned it to defendant Licht about two months before the accident. Licht, an attorney, knew little about horse trailers and had never owned one. Lightman, a horseman, also owned a larger trailer and a horse van. He had been in the garage business for 25 years, had done welding and was considered a master mechanic.

The trailer in question had been manufactured in about

1946 and Lightman bought it as a used trailer in 1949; it was thus about 10 years old at the time of the accident. It had been bought as a spare, had not been used much and had been stored outdoors. Lightman never examined the trailer closely in the seven years he had it. The only repairs he had ever made were to hook chains on the tie loops, install a new partition and, shortly before he loaned it to Licht, repaint it. Lightman did not give Licht any warning or instructions for care or inspection of the trailer.

Licht did not examine or inspect it before the accident, nor did he have anyone else do so. There was testimony to the effect that Lightman had offered the trailer for sale about a year before the accident. He had also offered to sell it to Licht and the latter voiced interest in purchasing it. At the time the trailer was loaned to Licht, Lightman told him that it was a good, strong, serviceable trailer.

Evidence was presented to the effect that it is necessary and customary to have tie loops in horse trailers, and that all trailers have them. Their functions are to secure the horse in the trailer and to aid in loading horses in a manner such as the plaintiff used. They are frequently subjected to great strains and, if properly welded, should hold three to four tons of pressure. An expert testified that as a matter of reasonable maintenance, tie rings should be examined at least once a year and that reasonable inspection would include looking at the weld to see if it were sprung or secured, scraping the paint to make sure it was solid and repainting the weld.

An expert welder, who had repaired the tie loop after the accident, testified that when he inspected the weld, it was badly rusted and in deteriorated condition; there was slag or surplus left over from the old weld; the weld was improper and insufficient for all purposes; it might have been pulled out merely by a horse hitched to it in transit; and that the improper condition of the weld was the probable cause of its breaking away and collapsing in the accident. The method used by the plaintiff in loading the horse was a matter of common practice used by horsemen and trainers and using the tie loop to assist in loading was similarly a usual practice.

Plaintiff's complaint pleaded counts in negligence and breach of warranty against both defendants. For purposes of clarity, the liability of the defendants will be treated separately.

As to defendant Licht, the plaintiff's original claim of negligence was based upon the theory that Licht failed to use

due care in his handling of the rope used in attempting to load the horse into the trailer. This cause of action was abandoned prior to the trial of the case. The warranty allegedly breached by Licht was that he had furnished "a reasonably proper and safe appliance to use and a safe place to work." Plaintiff alludes to the fact that in true warranty cases, liability has been imposed without proof of negligence. (*Tremeroli* v. *Austin Trailer Equipment Co.*, 102 Cal.App.2d 464, 475 [227 P.2d 923].) However, he does not contend that Licht was an insurer. It is his theory, rather, that Licht warranted that he had exercised reasonable care to ascertain that the trailer was not defective and was safe and suitable for the use to which it was to be put, i.e., that Licht "warranted" that he had not breached his duty of due care to the plaintiff. The "breach of warranty" alleged is, then, no more nor less than another claim of negligence in that Licht failed to make a reasonable inspection of the trailer, which failure constituted a breach of duty as to the plaintiff, actually and proximately resulting in the injuries sustained.

Thus, the major issue as to the defendant Licht is whether or not the evidence adduced at the trial presented a prima facie case of negligence sufficient to take the case to the jury. The evidence indicates that Licht requested plaintiff, a business visitor, to assist him in loading a horse into a trailer; that the trailer, while not Licht's own, had been in his possession for a period of two months; that while plaintiff was engaged in loading the horse, a tie loop collapsed, causing injury to his finger; that the tie loop had been in a defective condition due to rust and an improper weld; that Licht had made no examination or inspection of the trailer to ascertain whether or not it was in a safe condition; and that a reasonable inspection would have disclosed the defective condition of the tie loop.

As stated in *Jaehne* v. *Pacific Tel. & Tel. Co.*, 105 Cal.App.2d 683, 688 [234 P.2d 165] : "One who undertakes to furnish an appliance for the use of others ordinarily assumes a duty to furnish a proper and reasonably safe appliance, and is liable for injuries which may result to one using the appliance from his negligence. (*Blumberg* v. *M. & T. Incorporated*, 34 Cal.2d 226, 229 [209 P.2d 1] ; *Biondini* v. *Amship Corp.*, 81 Cal.App.2d 751, 763, 766 [185 P.2d 94] ; 65 C.J.S. 618, § 99.) The doctrine is placed on the ground of the failure of the former to exercise ordinary care which is due to everybody under the principles declared in sections

1708, 1714 and 3281 of the Civil Code. (*Dahms* v. *General Elevator Co.*, 214 Cal. 733, 737-742 [7 P.2d 1013]; *Lozano* v. *Pacific Gas & Elec. Co.*, 70 Cal.App.2d 415, 420 [161 P.2d 74]; *Cowles* v. *Independent Elevator Co.*, 22 Cal.App.2d 109, 114 [70 P.2d 711]; Anno. 6 A.L.R.2d 284.)''

In the case at bar the relationship between defendant Licht and the plaintiff with respect to the horse trailer was that of inviter and invitee. (*Cf. Jaehne* v. *Pacific Tel. & Tel. Co., supra*, 105 Cal.App.2d 683, 687.) In the circumstances here presented it was a question for the jury whether said defendant Licht exercised the degree of care required of him. (*Cf. Harvey* v. *San Diego Electric Ry. Co.*, 92 Cal. App. 487 [268 P. 468], and see *Johnson* v. *H. M. Bullard Co.*, 95 Conn. 251 [111 A. 70, 12 A.L.R. 766]; *Davis* v. *Sanderman*, 225 Iowa 1001 [282 N.W. 717].)

The jury could have found that Licht's failure to inspect the trailer, or have it inspected, to see that it was in reasonably safe condition, constituted a breach of his duty of due care to the plaintiff. It could be found from the evidence that the trailer was in Licht's possession for two months before the accident, that he did not inspect it, that the tie loop was in defective condition and that such defects, while discoverable upon a reasonable inspection, were concealed from a casual glance by virtue of the fact that only the top of the loop was visible, the remainder being partially covered by hay and partially concealed by plywood. Questions as to whether inspection would have revealed the defect; whether it was reasonable to require Licht, who knew little about trailers, to inspect; whether Licht should have had the trailer inspected by a properly qualified individual; and whether plaintiff, as an expert in handling horses, acted unreasonably as to his own safety in failing to inspect the tie loop himself, were all questions of fact for the jury. As to defendant Licht, the trial court erred in granting the motion for a judgment of nonsuit.

We pass now to a consideration of plaintiff's claims against defendant Lightman. Plaintiff contends: (1) that Lightman himself was negligent in that he failed to inspect the trailer and loaned it to Licht without either repairing it or warning Licht of its dangerous condition, and (2) that in so doing, Lightman breached implied and express warranties of fitness for a purpose for which he knew the trailer was to be used.

The major problem in determining the validity of these contentions is to ascertain the nature of the bailment of the trailer from Lightman to Licht. If the bailment in ques-

tion was a bailment for hire or a bailment for mutual benefit, the bailor, Lightman, had a duty to the bailee, Licht, and to third persons such as the plaintiff, not only to warn of actually known defects, but also to use reasonable care to make an examination of the chattel before letting it, in order to make certain that it was fit for the use known to be intended. (*McNeal* v. *Greenberg*, 40 Cal.8d 740, 742 [255 P.2d 810]; *Boyd* v. *White*, 128 Cal.App.2d 641, 657 [276 P.2d 92]; *Sproul* v. *Cuddy*, 131 Cal.App.2d 85, 93 [280 P.2d 158]; Rest., Torts, § 408; 12 A.L.R. 774; 61 A.L.R. 1336. 1337; 131 A.L.R. 845; 46 A.L.R.2d 404, 443; 7 Cal.Jur.2d 629, 634, Bailments, §§ 9, 12.)

▌ The duty of a bailor for hire is sometimes expressed in terms of an implied warranty of the fitness of the chattel for the use intended. However, whether such warranty is implied from the common law of bailments or from the statutory duties imposed by Civil Code, section 1955[1], it is generally recognized that it is not an absolute warranty, making the bailor an insurer or guarantor, but a warranty by the bailor that he has exercised reasonable care to ascertain that the chattel is safe and suitable for the purpose for which it is hired. (*Dam* v. *Lake Aliso Riding School*, 6 Cal.2d 395, 400 [57 P.2d 1315]; *McNeal* v. *Greenberg, supra*; *Sproul* v. *Cuddy, supra*; *Rohar* v. *Osborne*, 133 Cal.App.2d 345, 353 [284 P.2d 125]; 12 A.L.R. 774; 61 A.L.R. 1336, 1337; 131 A.L.R. 845; 46 A.L.R.2d 404, 451.) The essential inquiry, thus, is the same in respect to the breach of warranty theory as to the negligence claim: whether the defendant complied with the standard of reasonable care in ascertaining the fitness of the chattel for the use for which he knew it was hired.

▌ The general rule is that the only duty which a gratuitous bailor owes either to the bailee or to third persons is to warn them of actually known defects which render the chattel dangerous for the purpose for which it is ordinarily used; he has no liability for injuries caused by defects in the subject matter of the bailment of which he was not aware. (*Rocha* v. *Garcia*, 203 Cal. 167, 171 [263 P. 238]; *Gagnon* v. *Dana*, 69 N.H. 264 [39 A. 982, 983-984, 41 L.R.A. 389, 76 Am.St.Rep. 170]; *Johnson* v. *H. M. Bullard Co.*, 95 Conn.

---

[1]Section 1955: ''OBLIGATIONS OF LETTER OF PERSONAL PROPERTY. One who lets personal property must deliver it to the hirer, secure his quiet enjoyment thereof against all lawful claimants, put it into a condition fit for the purpose for which he lets it, and repair all deteriorations thereof not occasioned by the fault of the hirer and not the natural result of its use.''

251 [111 A. 70, 72-73, 12 A.L.R. 766]; 12 A.L.R. 774, 793; 61 A.L.R. 1336, 1338-1339; 131 A.L.R. 845, 855; 46 A.L.R.2d 404, 427.) While there have been a few cases in which the gratuitous bailor's liability to innocent third persons has been based on a failure to exercise reasonable care in discovering defects ascertainable by inspection, these almost without exception have involved borrowed automobiles injuring pedestrians and liability appears to have been based upon a "dangerous instrumentality" theory. (See 48 Dick. L. Rev. 103, and cases cited therein.)

Since the evidence is uncontroverted that Lightman had no knowledge whatever of the defective condition of the tie loop, the only theory on which the plaintiff can recover is to present a prima facie case of a bailment for hire or bailment for mutual benefit. While plaintiff concedes that Lightman did not rent the trailer to Licht, he claims that it was a bailment by the owner to a prospective purchaser in order to induce a purchase and, in that sense, was a bailment "for hire" or, more properly, a bailment for mutual benefit. ▆ A bailment, otherwise gratuitous, where made to induce a purchase, has been considered sufficient to give rise to the same duty of reasonable care on the part of the bailor as an ordinary bailment for hire. (*Nelson* v. *Fruehauf Trailer Co.*, 20 N.J.Super. 198 [89 A.2d 445, 447], aff'd 11 N.J. 413 [94 A.2d 655]; and see *Holt* v. *Eastern Motor Co.*, 65 Ga.App. 502 [15 S.E.2d 895, 898]; *Al De Ment Chevrolet Co.* v. *Wilson*, 252 Ala. 662 [42 So.2d 585, 586]; *Nash* v. *Reed*, 65 Ga.App. 502 [59 S.E.2d 259, 260, 262]; 46 A.L.R.2d 404, 430, 437, 442, and cases cited therein.)

▆ The proposition that a bailment motivated by the bailor's desire to promote a sale may be regarded as a bailment for mutual benefit (giving rise to the same duty of care as in the case of a bailment for hire) finds support by way of analogy. Section 1925 of the Civil Code provides: "Hiring is a contract by which one gives to another the temporary possession and use of property, other than money, *for reward,* and the latter agrees to return the same to the former at a future time." (Emphasis added.) Section 2100 of the Civil Code states: "A carrier for persons *for reward* must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill." (Emphasis added.) Interpreting the words "for reward" in the latter statute, *Harris* v. *Smith,* 44 Cal.App.2d 694 [112 P.2d 907],

held that a landlord was a "carrier for reward" with relation to a prospective tenant injured in an elevator. The appellate court observed (at p. 697): "The respondents contemplated the renting of an apartment from the appellant, who, at the time of the accident, was availing herself of the opportunity of showing the apartment for the purpose of rental. This would seem to be a sufficient 'reward' under the meaning of section 2100 of the Civil Code which provides that a carrier for reward must use the utmost care for their safe carriage." By parity of reasoning, a bailment to a prospective purchaser motivated by the bailor's desire to promote a sale of the subject matter could reasonably be regarded as a "hiring . . . for reward" within the meaning of section 1925 of the Civil Code.

To support his contention that the bailment in the case at bar was not gratuitous, plaintiff presented the following evidence: (1) Lightman offered the trailer for sale about a year before the accident; (2) he had it freshly painted shortly before lending it to Licht; (3) it was a spare trailer for which he had no use; (4) at the time of the bailment, Lightman was receptive to an offer to purchase; (5) after the delivery of the trailer and before the accident, Lightman offered to sell the trailer to Licht and Licht agreed to consider buying it; (6) shortly thereafter they had another discussion with reference to a sale to a third person; and (7) Lightman knew that Licht wanted to load a particular horse into the trailer, from which " [i]t may be inferred that if the horse had been loaded in the trailer successfully, that the consummation of a sale was more likely." On this evidence it would have been possible for the jury to find that the bailment was not gratuitous but was made for the purpose of inducing a purchase. Therefore, the plaintiff sustained his burden of presenting a prima facie case of a bailment for mutual benefit. Accordingly, the trial court erred in granting a motion for a judgment of nonsuit as to defendant Lightman.

The judgment of nonsuit is reversed.

Fox, P. J., and Ashburn, J., concurred.