[Civ. No. 19014.  First Dist., Div. Two.  Apr. 17, 1961.]

SAMUEL M. ZUCKER et al., Respondents, v. PASSETTI TRUCKING COMPANY (a Corporation) et al., Defendants; RENTAL MACHINERY COMPANY, INC. (a Corporation), Appellant.

Hauerken, St. Clair & Viadro and Hauerken, St. Clair, Zappettini & Hines for Appellant.

Lewis & Stein and Marvin E. Lewis for Respondents.

KAUFMAN, P. J.—This is an appeal from a judgment in favor of the plaintiffs in an action for personal injuries sustained in an accident involving a compressor owned by the defendant, Rental Machinery Company, Inc. The trial court found that on March 23, 1957, Charlie Bland, an employee of the defendant, Passetti Trucking Company, Inc., was driving a 1948 Ford dump truck north on Bayshore Highway, and towing a compressor rented from the defendant, Rental Machinery Company, Inc., in a negligent and careless manner, as there was no cotter pin in the hitch connecting the truck and the compressor. The court further found that Rental Machinery had been negligent in renting the compressor with a safety chain which was not safe because of

the construction of the hook on the end of the chain; and that because of the negligence of both defendants, the compressor became loose and unfastened from the truck, and jackknifed across the highway near the Pulgas Avenue intersection into the automobile traveling in a southerly direction, driven by the plaintiff, Samuel M. Zucker, and occupied by his wife, the plaintiff, Maxine Zucker, and mother-in-law, the plaintiff, Elsa Frank.

On this appeal taken only by Rental Machinery Company, Inc. (hereinafter referred to as appellant), it is argued: (1) The evidence does not support the finding as to the negligence of Rental Machinery Co., Inc.; (2) Rental Machinery, as a matter of law, could not be liable for the negligence of its bailees (Passetti and Bland); and (3) the judgment must be reduced in the amount of $10,000. There is no merit in any of these arguments.

The first argument on appeal is that the evidence does not support the trial court's finding that the appellant was negligent in renting the compressor to Passetti "with a safety chain which was not safe by reason of the construction of the hook on the end of said chain."

Appellant's employee at the time of the accident, one James A. Silva, testified that the safety of hauling the 4,700-pound compressor depended on the chain by which it was attached to the towing vehicle; that the appellant did not buy safety chains with locks, but bought barrels of chains which were then cut to lengths and attached to the compressors and other rental equipment; that it was appellant's policy to check on the hooking of equipment as it was rented out, because appellant recognized the danger of an improperly hooked compressor coming loose on the highway; that for the same reason, as well as in order to protect its equipment, the appellant always gave instructions on the proper method of hooking to all lessees of equipment; that in addition to hooks, the compressors were rented with safety chains for emergencies, i.e., in case the hooks failed to hold; that the kind of hook on the safety chain of the compressor in the instant case was not a horseshoe type with a pin and bolt, but was such that a rope or wire would have to be used to affix the chain to the truck; that the appellant had used bolt-type locks on safety chains, and that with such locks no wire was needed to secure the chain to the truck. He further testified that in the instant case, he did not know whether instructions had been given to Passetti's employees and that

the appellant was relying on Passetti to properly hook the compressor to the truck.

Mr. Passetti testified that in his experience, safety chains attached to compressors did not have the type of hook that was on the chain here involved as with this particular type of hook, the compressor could become detached; that a hook is not used as it cannot stay on the compressor and one cannot depend on the piece of wire holding it together; that other types had bolt hooks and that his own safety chains were protected by a clevis or shackle.

A highway patrol officer testified that during the period of time he had been enforcing section 701, subsections (e) and (g), of the Vehicle Code* [the citations are the Vehicle Code sections as numbered prior to the 1959 recodification], the type of hook used on the safety chain in the instant case was not generally used, but that shackles and safety bolts were generally used.

Respondents' expert witness testified that the particular safety chain rented by the appellant was not safe as there was no assurance that it would stay hooked. While it was clear that the safety chain did not break, it can be inferred from the evidence that the chain and hook became loose and unfastened. Therefore, it was for the trial court and not this court to weigh the conflicting evidence. Appellant relies on *Boyd* v. *White,* 128 Cal.App.2d 641 [276 P.2d 92]. In that case, a rented airplane went out of control and crashed into the plaintiff's house. In affirming a judgment of nonsuit as to the owner and bailor of the airplane, this court (Division One) said at page 657:

---

*"(e) [Use of safety chain, etc.: Exception.] Every towed vehicle shall be coupled to the towing vehicle by means of a safey [*sic*] chain, chains, cables [*sic*], cables or equivalent devices in addition to the regular trailer hitch or coupling. This requirement shall not apply to a semitrailer having a connecting device composed of a fifth wheel and kingpin assembly, nor to a pole or pipe dolly. No more slack shall be left in safety chains, cables, or equivalent device than shall be necessary to permit proper turning and the safety chains, cables or equivalent device shall be so connected to the towed and towing vehicle and to the drawbar to prevent the drawbar from dropping to the ground if the drawbar fails and shall be of sufficient strength to control the trailer in event of failure of the regular trailer hitch or coupling."

"(g) [Whipping or swerving of towed vehicles.] No person shall operate a train of vehicles when any trailer, semitrailer or other vehicle being towed whips or swerves from side to side dangerously or unreasonably or fails to follow substantially in the path of the towing vehicle. [Amended by Stats 1953, ch 1157, § 1.]"

"It is doubtless the law that a bailor or seller is generally liable to third persons for injuries if such chattel was defective at the time of the bailment, or sale, and the defect contributed to the injury. (*Benton* v. *Sloss*, 38 Cal.2d 399 [240 P.2d 575]; *MacPherson* v. *Buick Motor Co.*, 217 N.Y. 382 [111 N.E. 1050, Ann.Cas. 1916C 440, L.R.A. 1916F 696].) The difficulty is that in the present case there is no evidence at all that the plane was defective at the time of the bailment." The difficulty with appellant's argument is that, as indicated above, the trial court here found that there was a defect in the safety chain so that it was not suitable for the purpose for which it was intended, and we think there is ample evidence to support this finding. Even if the type of chain supplied by the appellant was a standard one in common use, this would not necessarily be conclusive. "The use of a standard which is unreasonably dangerous can constitute negligence." (*Cf. Kitsap County Transp. Co.* v. *Harvey*, 15 F.2d 166, 167 [48 A.L.R. 1420].) There is, therefore, no merit in appellant's first argument.

█ Appellant next argues that the trial court erred in its finding that its negligence was a proximate cause of the accident. Appellant's theory is that Bland's negligence was a deliberate intervening act which broke the chain of causation and that as a bailor, appellant could not be liable for the negligence of its bailees, Bland and Passetti. Appellant cites *Stultz* v. *Benson Lumber Co.*, 6 Cal.2d 688 [59 P.2d 100]. More in point is *Lehmuth* v. *Long Beach Unified Sch. Dist.*, 53 Cal.2d 544 [2 Cal.Rptr. 279, 348 P.2d 887], which action was brought by several pedestrians who were injured when a sound trailer, towed by an automobile, broke loose and went over the curb. The evidence established that no safety chain [required by section 701, subdivision (e) of the Vehicle Code, *supra*] had been used. In rejecting an argument, our Supreme Court said at pages 552-553:

"Since one of the district's normal activities is the furnishing to students for use upon the public highways of sound trailers which must be hitched to a towing vehicle, it would seem that the subject of safety chains was of sufficient importance to require specific supervision by the district's employees. When the district, through negligent supervision, permitted a tow car and trailer upon a public street without equipping them with the statutorily prescribed device of a safety chain, it was guilty of independent negligence which operated as a proximate cause of the accident in question.

"It was not necessary to prove that the very injury which occurred must have been foreseeable by the school authorities in order to establish that their failure to provide the necessary safeguards constituted negligence. Their negligence is established if a reasonably prudent person would foresee that injury of the same general type would be likely to happen in the absence of such safeguards. (*Taylor* v. *Oakland Scavenger Co.*, 17 Cal.2d 594, 600 [110 P.2d 1044].)"

In the instant case, it was established that the safety chains were provided precisely because the appellant knew its equipment was to be towed on a public highway and foresaw the very injury which occurred.

Furthermore, it is the generally accepted rule that a bailor for hire of a chattel must use reasonable care to make examination of the chattel before letting it, in order to make certain that it is fit for the use known to be intended. (*McNeal* v. *Greenberg*, 40 Cal.2d 740, 742 [255 P.2d 810]; Civ. Code, § 1955; *Tierstein* v. *Licht*, 174 Cal.App.2d 835 [345 P.2d 341].) This means that in a situation such as the instant one, a bailor, knowing that a machine is being hired for the purpose of being used on the public highways, has the duty of inspecting it to discover defects. This duty does not arise solely from the contract of bailment, but is a general duty imposed by law on the bailor to refrain from putting on the highway an instrumentality which might reasonably be expected to cause harm not only to the bailee, but to third persons lawfully using the highway (*Tierstein* v. *Licht, supra,* at 841; see authorities collected in 46 A.L.R.2d 443; *Kothe* v. *Tysdale* (1951), 233 Minn. 163 [46 N.W.2d 233], wherein the lessor-vendor of a house trailer with a defective coupling mechanism was held liable to a third person injured when the trailer became detached and struck the car in which the plaintiff was riding).

The final argument on appeal is that the amount of damages for plaintiff, Samuel M. Zucker, must be reduced in the amount of $10,000 as it was increased in this amount at the time of settlement of findings. The record shows that at the hearing on the objections to the proposed findings, that respondents' counsel had advised appellant's counsel that he had a private conversation with the court, during the course of which respondents' counsel pointed out that the court had forgotten about a broken leg and the loss of earnings for a period of nine months. After listening to both counsel on the settlement of findings hearing, the court took

the entire matter under submission, later signed findings and judgment. There is no merit in this argument because the trial court had the power at any time before signing findings to determine the proper amount of damages.

Judgment affirmed.

Draper, J., and Shoemaker, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 14, 1961.