154 So.2d 169 (1963)
Edwin GREEN, Jr., as Administrator of the Estate of Edwin Green, Deceased, and Mary Green, Appellants,
v.
The AMERICAN TOBACCO COMPANY, Appellee.
No. 31960.
Supreme Court of Florida.
June 5, 1963.
Neal Rutledge, Milledge, Rutledge & Milledge, Lawrence V. Hastings, Miami, Irma Feder, Miami Beach, for appellants.
Hervey Yancey, Samuel A. Brodnax, Jr., Smathers & Thompson, Miami, Ralph D. Ray, Melvin D. Goodman, Janet C. Brown, New York City, for appellee.
*170 DREW, Justice.
Pursuant to statutory certification procedure[1] the United States Court of Appeals for the Fifth Circuit has presented to this Court a question concerning implied warranty liability for lack of merchantability or fitness under Florida law, arising in an action for wrongful death consolidated with a suit instituted by the decedent Green prior to his death from lung cancer in 1958. The trial of the cause resulted in a general verdict for defendant, and the jury also answered a number of special interrogatories hereinafter detailed. Upon appeal the Court of Appeals affirmed, 304 F.2d 70, one judge dissenting, but in recognition of the controlling effect of Florida law in a diversity action a petition for rehearing was granted "to the extent necessary to certify [the following] question or proposition of the laws of Florida" to this Court:
"Does the law of Florida impose on a manufacturer and distributor of cigarettes absolute liability, as for breach of implied warranty, for death caused by using such cigarettes from 1924 or 1925 until February 1, 1956, the cancer having developed prior to February 1, 1956, and the death occurring February 25, 1958, when the defendant manufacturer and distributor could not on, or prior to, February 1, 1956, by the reasonable application of human skill and foresight, have known that users of such cigarettes would be endangered, by the inhalation of the main stream smoke from such cigarettes, of contracting cancer of the lung?"
We note at the outset that all questions of causation and privity are foreclosed by the terms of the question certified, which expressly assumes, as found by the jury's response to interrogatories in the trial of the cause, that defendant's cigarettes caused plaintiff's fatal cancer. We conclude also that the question thus framed does not present for our consideration the issue of whether the cigarettes which caused a cancer in this particular instance were as a matter of law unmerchantable[2] in Florida under the stated conditions, nor does it request a statement of the scope of warranty implied in the circumstances of this case. The inquiry before us is, instead, limited to the status of Florida law upon imposition of liability "as for breach of implied warranty" when the manufacturer or warrantor "could not, by the reasonable application of human skill and foresight, have known of the danger."[2(a)] By response to a specific interrogatory the jury in this case found that the defendant, by this standard, could not at the pertinent time have known of the danger involved. The general verdict for defendant was responsive to the trial court's instruction that "implied warranty does not cover substances in the manufactured product the harmful effects of which no developed human skill or foresight can afford knowledge."
Upon the critical point, our decisions conclusively establish the principle that a manufacturer's or seller's actual knowledge or opportunity for knowledge of a defective or unwholesome condition is wholly irrelevant to his liability on the theory of implied warranty, and the question certified must therefore be answered in *171 the affirmative. As already indicated, we do not feel that the inquiry in terms either requests a response on the ultimate issue of liability in this case or requires any comment on the disposition of issues between the court and jury under the law relating to scope and breach of the implied warranty that a product supplied for human consumption shall be reasonably fit and wholesome for that general purpose.
Our conclusion on the point presented rests not only upon a determination, acknowledged in the opinion of the Court of Appeals herein, that there is no direct and affirmative precedent in our law for the "human skill and foresight" limitation on warranty liability, but also upon what seem to us clear and definitive pronouncements in our case law negativing this limitation. One of the more recent and exhaustive opinions is that in Carter v. Hector Supply Co.[3] This Court in that case expressly overruled the holding of the court of appeal "that proof of actual or implied knowledge of a defect on the part of a [defendant] is essential to his liability on an implied warranty."[4] "Implied knowledge" refers clearly to the situation where a defendant could, with reasonable diligence or "application of human skill and foresight," have had knowledge. The decision in Carter on this point of law therefore effectively negates any idea that proof of lack of opportunity for knowledge of a harmful condition might prevent implied warranty liability.
No reasonable distinction can, in our opinion, be made between the physical or practical impossibility of obtaining knowledge of a dangerous condition, and scientific inability resulting from a current lack of human knowledge and skill. Sencer v. Carl's Markets[5] imposed upon a dealer liability for sale of a can of sardines which he could not have known was dangerous without opening a scaled container and thereby destroying the product's salability. The opinion quotes with approval from text authorities[6] explaining the prevailing rule that the fact that a defect could not possibly have been known or discovered by a defendant does not prevent liability, because "the same argument * * * may be made in regard to any implied warranty, not only of food * * * where the buyer must have been aware that the seller could not discover a defect if it existed." This case illustrates, we think, that whatever may be the scope of an implied warranty in a given case, the basis of such liability is the undertaking or agreement, attributed by law, to be responsible in the event the thing sold is not in fact merchantable or fit for its ordinary use or purposes. The assumption of responsibility, even implied assumption, is not, of course, necessarily co-equivalent with skill and knowledge. To the extent that our cases take note of a defendant's opportunity for knowledge,[7] it is merely in recognition of a supplier's superior position, relative to the purchasing public, as a factor affecting policy considerations rather than determining the limits of implied warranty liability in a particular situation.
*172 The Florida decisions[8] recognize a distinction between the ordinary merchantability warranty involved in the instant case and a warranty of fitness for a particular purpose which "must and necessarily does depend upon whether or not the buyer relied upon his own judgment at the time of the purchase or relied on the skill or judgment of the seller." The opinions refer to the classical statement of implied warranty law in Benjamin on Sales,[9] containing a full discussion of the derivation of these principles governing implied warranties in the common law. The decision in Lambert v. Sistrunk,[10] denying a merchant's liability for sale of a defective stepladder, is an application of one of the limiting principles discussed by Benjamin and incorporated in statutes on this subject: If the defect is discoverable by simple observation then the law will imply no warranty against its existence. The opinion in that case characterizes implied warranty liability as an exception to the doctrine of caveat emptor, and relates this liability to "the reliance by the buyer on the seller's judgment," but does not in terms or by implication limit such liability to the situation where a dealer or manufacturer could, by reasonable care or "application of human skill," have known of the danger. Whether or not reliance is justified, when the defect is one which a purchaser need not reasonably expect, would depend not on the actual state of human or industrial knowledge, which may be quite unknown to the purchasing public generally, but on what information the buyer may, under the circumstances, reasonably suppose the seller has.[11]
In sum, our case law affirmatively supports and indicates no departure from the rule that implied warranty liability is not limited by the foreseeability doctrine, the "reasonable application of human skill and foresight" test of tort liability:
"* * * The warranty of merchantable quality does not rest, and from the beginning did not rest, upon any such basis. It is a matter of contract, of interpretation of the language used in the light of the fact that the seller is a dealer, and dealers deal in merchantable goods. The only `reliance' which it involves is reliance upon the seller's *173 undertaking, as it is reasonably understood by the buyer. The pleasant sound of `fitness for the purpose' should not be allowed to divert attention from one warranty to the other, or to obscure the fact that goods are merchantable only if they are fit for ordinary use. * * *"[12]
The contention that the wholesomeness of a product should be determined on any standard other than its actual safety for human consumption, when supplied for that purpose, is a novel proposition in our law, and one which we are persuaded has no foundation in the decided cases. To hold that prevailing industry standards supplant the ordinary standard of objective truth and proof, and should be conclusive on the issue of a product's reasonable fitness for human use or consumption, would be to shift to the purchaser the risk of whatever latent defectiveness may ultimately be proven by experience and advancement of human knowledge, a risk which we are convinced was from the inception of the implied warranty doctrine intended to be attached to the mercantile function. There exists, we think, no real alternative and no valid objection to this distribution of the burden, if the public health is to be protected in any practical sense from exploitation by those who, for a profit motive, undertake to supply the vast and ever increasing variety of products which the people by unprecedented powers of commercial persuasion are daily urged to use and consume.
Accordingly, the question propounded to us, and found by us to be within the contemplation of our Rules, is answered in the affirmative as hereinabove set forth.
The Clerk of this Court shall forthwith transmit to the certifying Court a true copy hereof, and shall return to said Court any original papers or documents which may have been transmitted here for our inspection.
It is so ordered.
ROBERTS, C.J., and TERRELL, O'CONNELL and HOBSON (Ret.), JJ., concur.
THOMAS and CALDWELL, JJ., dissent.
NOTES
[1] Sec. 25.031, F.S.A.; F.A.R. 4.61, 31 F.S.A. Sun Insurance Office, Ltd., v. Clay, Fla. 1961, 133 So.2d 735. See also 24 F.R.D. 481, 490; 16 Miami L.Q. 425; 55 N.W.L. 422; 40 Texas L.R. 621.
[2] Cf. Food Fair Stores of Florida v. Macurda, Fla. 1957, 93 So.2d 860, cited in Frumer and Friedman, Products Liability, Sec. 25, and see also Sec. 29.03[1] on the problem of individual reactions to ordinarily harmless substances, discussion of which we deem unwarranted here because of the lack of Florida precedent and the limited issue posed in this nonadversary proceeding.
[2(a)] While not involved in the question before us, we note that the defense of assumption of risk is not asserted or involved in these proceedings.
[3] Fla. 1961, 128 So.2d 390.
[4] Ibid, p. 392.
[5] Fla. 1950, 45 So.2d 671.
[6] Williston on Sales, Rev.Ed., Vol. 1, p. 635.
[7] Blanton v. Cudahy Packing Co., 154 Fla. 872, 19 So.2d 313, 316:

"The implied warranty theory of liability comports with the general trend of the best reasoned cases. The manufacturer knows the content and quality of the food products canned and offered to the public for consumption. The public generally is vitally concerned in wholesome food, or its health will be jeopardized. If poisonous, unhealthful and deleterious foods are placed by the manufacturer upon the market and injuries occur by the consumption thereof then the law should supply the injured person an adequate and speedy remedy. It is our conclusion that the implied warranty remedy of enforcement will accomplish the desired end." See also Cliett v. Lauderdale Biltmore Corp., Fla. 1949, 39 So.2d 476.
[8] Berger v. E. Berger, 76 Fla. 503, 80 So. 296; Smith v. Burdine's, Inc., 144 Fla. 500, 198 So. 223, 229, 131 A.L.R. 115.
[9] 5th ed., Ch. III, 595-651.
[10] Fla. 1952, 58 So.2d 434, containing the following general comment:

"It has been said that the concept of implied warranty rests upon the foundation of business ethics and constitutes an exception to the maxim `let the buyer beware,' itself encompassing the idea that there is no warranty implied with respect to the quality of the goods being sold. To come into play, the exception must therefore spring from some moral obligation on the part of the seller, or perhaps more accurately, on the breach of some such duty amounting to fraud or the taking advantage of the buyer by reason of some superior knowledge in the seller, or the reliance by the buyer on the seller's judgment."
[11] Cf. Smith v. Burdine's, Inc., note 8 supra. For a statement of the converse question of what a seller may reasonably expect a purchaser to know, especially with regard to substances natural to a product, see Frumer and Friedman, note 2 supra, Vol. I, p. 671:

"Probably the most thorough analysis and attack upon the `foreign-natural' test is made in the recent decision in Betehia v. Cape Cod Corp. [10 Wis.2d 323, 103 N.W.2d 64 (Wis. 1960)] The Wisconsin court, in that case, in a very extensive discussion, refused to hold that there was no breach of warranty or negligence as a matter of law where injury was caused by a chicken bone in a chicken sandwich. The court adopted the test of `reasonable expectation,' stating:
"`What is to be reasonably expected by the consumer is a jury question in most cases; at least, we cannot say as a matter of law that a patron of a restaurant must expect a bone in a chicken sandwich either because chicken bones are occasionally found there or are natural to chicken.
"`This test as applied to an action for breach of the implied warranty is keyed to what is "reasonably fit."'"
[12] Prosser on Warranty, Vol. 27, pp. 117-168, Minn.Law Review.