Edwin GREEN, Jr., as Administrator of the Estate of Edwin Green, Deceased, and Mary Green, Appellants,

v.

AMERICAN TOBACCO COMPANY, Appellee.

No. 190003.

United States Court of Appeals Fifth Circuit.

Dec. 11, 1963.

Lawrence V. Hastings, Neal P. Rutledge, Rutledge & Milledge, and Green & Hastings, Miami, Fla., for appellants, Irma Feder, Miami Beach, Fla., of counsel.

Samuel A. Brodnax, Jr., Hervey Yancey, Miami, Fla., Melvin D. Goodman, New York City, Smathers & Thompson, Miami, Fla., Ralph D. Ray, Chadbourne, Parke, Whiteside & Wolff, New York City, for appellee, Janet C. Brown, New York City, of counsel.

Before RIVES, CAMERON and BELL, Circuit Judges.

RIVES, Circuit Judge.

First, to the Justices of the Supreme Court of Florida we wish to express publicly and with deep sincerity our appreciation for their answer to the question which we certified to that Court. See Green v. American Tobacco Co., Fla.1963,

154 So.2d 169; Green v. American Tobacco Co., 5 Cir. 1962, 304 F.2d 70, 86. That answer has saved this Court, through the writer as its organ, from committing a serious error as to the law of Florida which might have resulted in a grave miscarriage of justice. The Supreme Court of Florida has been a very real help in the administration of justice.

Since the opinion of the Supreme Court of Florida, the parties have submitted to this Court additional briefs and oral argument. The appellants, plaintiffs below, would have us enter judgment for plaintiffs on the issue of liability and remand the case to the district court solely for the ascertainment of damages. The appellee, defendant below, insists that the judgments for defendant should be affirmed on grounds other than that decided by the Supreme Court of Florida, or, if the judgments for defendant are not now affirmed, that the case should be remanded for a full new trial.

The Supreme Court of Florida answered in the affirmative the following question certified to it by this Court:

"'Does the law of Florida impose on a manufacturer and distributor of cigarettes absolute liability, as for breach of implied warranty, for death caused by using such cigarettes from 1924 or 1925 until February 1, 1956, the cancer having developed prior to February 1, 1956, and the death occurring February 25, 1958, when the defendant manufacturer and distributor could not on, or prior to, February 1, 1956, by the reasonable application of human skill and foresight, have known that users of such cigarettes would be endangered, by the inhalation of the main stream smoke from such cigarettes of contracting cancer of the lung?'" 154 So.2d at 170.

The gist of the opinion of the Supreme Court of Florida is contained in the following response:

"Upon the critical point, our decisions conclusively establish the

principle that a manufacturer's or seller's actual knowledge or opportunity for knowledge of a defective or unwholesome condition is wholly irrelevant to his liability on the theory of implied warranty, and the question certified must therefore be answered in the affirmative." 154 So.2d at 170, 171.

The Florida Court was careful to limit its decision to that single response, saying:

"We note at the outset that all questions of causation and privity are foreclosed by the terms of the question certified, which expressly assumes, as found by the jury's response to interrogatories in the trial of the cause, that defendant's cigarettes caused plaintiff's fatal cancer. We conclude also that the question thus framed does not present for our consideration the issue of whether the cigarettes which caused a cancer in this particular instance were as a matter of law unmerchantable in Florida under the stated conditions, nor does it request a statement of the scope of warranty implied in the circumstances of this case. The inquiry before us is, instead, limited to the status of Florida law upon imposition of liability 'as for breach of implied warranty' when the manufacturer or warrantor 'could not, by the reasonable application of human skill and foresight, have known of the danger.' * * *

" * * * As already indicated, we do not feel that the inquiry in terms either requests a response on the ultimate issue of liability in this case or requires any comment on the disposition of issues between the court and jury under the law relating to scope and breach of the implied warranty that a product supplied for human consumption shall be reasonably fit and wholesome for that general purpose." 154 So.2d at 170, 171.

What issues then remain in the case? Clearly, the only issues as to defendant's liability are those relating to implied warranty. As shown in our original opinion, Green v. American Tobacco Company, supra, 304 F.2d at p. 71, the plaintiffs asserted in separate counts six theories of liability, four of which were decided by the district court as matters of law against the plaintiff. On appeal, no error was claimed as to those rulings. The district court submitted the case to the jury upon only two theories of liability, breach of implied warranty and negligence. On appeal the plaintiffs accepted the jury's finding that the defendant was not liable for negligence. The only theory of liability remaining in the case is that of implied warranty.

On Count 1 charging a breach of implied warranty, the jury returned general verdicts for the defendant and also answered the four written interrogatories submitted under Rule 49(b), Fed. R.Civ.P., which were quoted in our original opinion, 304 F.2d at 71, 72.

The defendant insists that the scope of its implied warranty was so limited that there was a total lack of evidence to support plaintiffs' claim of breach and, hence, that the judgments for the defendant must be affirmed notwithstanding the opinion of the Supreme Court of Florida. In varying ways the defendant describes what it claims to be the limited scope of its implied warranty; e. g., (a) "that the article must be of the same quality, material, workmanship and availability for use as others sold under the same trade name"; (b) that "there was [no] foreign substance or * * * spoiled, contaminated or other substandard ingredient which caused the injury, and such substance or ingredient reflected a material difference between the article which caused the injury and the usual article sold under the same trade name"; (c) that "the Florida Supreme Court's rule is only that a product must be 'reasonably fit and wholesome' and have a 'reasonable fitness for human use or consumption'."

We need not review the Florida decisions as to the defendant's claimed limi-

tations, such as those lettered (a) and (b), supra; for, whatever may be the general rule, very clearly the law of this case has established the scope of the implied warranty substantially as that lettered (c), supra.

There has never been presented by the evidence any contention that Lucky Strike cigarettes were more dangerous or had a greater propensity to cause lung cancer than cigarettes bearing other brand names. Nor has there been any contention that the cigarettes which Mr. Green smoked contained any foreign substance, or any spoiled, contaminated or other substandard ingredient which caused his injury and death. Instead, plaintiffs' contention from the beginning has been that cigarettes—not Lucky Strike cigarettes alone—cause lung cancer. If defendant's claimed limitations such as those lettered (a) and (b), supra, are true and sound limitations of the scope of its implied warranty, then the question which we certified to the Supreme Court of Florida and the responsive opinion of that Court have been mere useless abstractions.

■ In submitting the case to the jury, the district court charged as follows:

"The manufacturer of products which are offered for sale to the public in their original package for human consumption or use *impliedly warrants that its products are reasonably wholesome or fit for the purpose for which they are sold,* but such implied warranty does not cover substances in the manufactured product, the harmful effects of which no developed human skill or foresight can afford knowledge."

(Emphasis supplied.)

That instruction was taken verbatim from plaintiffs' requested written charge No. 11 (R. pp. 1127, 1128), as to which the plaintiffs consented to the insertion of the adverb "reasonably" to modify "wholesome or fit" (R. p. 1075). The defendant made no objection to that part of the charge which we have emphasized,

supra. That part was also substantially included in plaintiffs' requested but refused Charge No. 10 (R. p. 1126). As a part of the law of this case the parties are, therefore, bound by the scope of the implied warranty as so defined by the district court.

Further, while the Supreme Court of Florida, in its advisory opinion, declined to pass on the scope of warranty implied in the circumstances of this case, its footnote 11 (154 So.2d 172) impliedly rejected the "foreign-natural" test, and in the last quotation which we have made from the opinion, supra p. 675, it referred to " * * * the implied warranty that a product supplied for human consumption shall be reasonably fit and wholesome for that general purpose." That is, we conclude, a correct definition of the scope of the implied warranty under the law of Florida. See McBurnette v. Playground Equipment Corporation, Fla.1962, 137 So.2d 563, 565. Certainly it is the definition by which the parties are bound as a part of the law of this case.

■ The defendant argues, however, that, even under that definition, it was entitled to a directed verdict because there was no evidence that Lucky Strike cigarettes were not *"reasonably* fit and wholesome." To products intended for human consumption, and the use of which may cause injury or death, the jury may properly apply a very strict standard of reasonableness.

■■ Without examining the other voluminous evidence, a single reference to the testimony of Dr. Ernest L. Wynder will suffice to show that there was evidence from which the jury could properly conclude that the standard of reasonableness had been breached. Dr. Wynder testified that "smoking was a main factor in lung cancer" (R. 119); that the "risk of a very heavy smoker to develop lung cancer is at least twenty times greater than a non-smoker" (R. 135); that "the major cause of epidermoid lung cancer in man is cigarette smoking" (R. 142); that "the major factor that produces lung cancers in American males is

smoking" (R. 186). Dr. Wynder conceded "that the vast majority of smokers do not get lung cancer" (R. 186, 187), but by "vast majority" he meant that "one in nine or one in ten" do develop lung cancer. (R. 188.) If the jury agreed with the testimony of Dr. Wynder, it could have reasonably inferred that the cigarettes were not *"reasonably* fit and wholesome." We conclude that the defendant was not entitled to directed verdicts on any of the grounds urged. We agree with the Supreme Court of Florida that "[t]he general verdict for defendant was responsive to the trial court's instruction that 'implied warranty does not cover substances in the manufactured product the harmful effects of which no developed human skill or foresight can afford knowledge.' " 154 So.2d at 170. In conformity with the opinion of the Supreme Court of Florida that that instruction was erroneous, the judgments for the defendant must be reversed.

It does not, however, follow, as urged by the plaintiffs, that we should render judgments for plaintiffs on the issue of liability. The jury has not made any sufficient finding on the question of reasonableness, that is, as to whether or not the cigarettes were *"reasonably* fit and wholesome." The jury did find that the smoking of Lucky Strike cigarettes on the part of the decedent, Green, was a proximate cause of the development of cancer in his left lung which caused his death. It is possible, however, that those findings are consistent with the standard of reasonableness, for as this Court recently said: "Strict liability on the warranty of wholesomeness, without regard to negligence, 'does not mean that goods are warranted to be foolproof or incapable of producing injury * *.' " Lartigue v. R. J. Reynolds Tobacco Company, 5 Cir. 1963, 317 F.2d 19, 37.

The plaintiffs urge that the defendant waived any further finding on the ques-tion of reasonableness by not requesting the submission of any interrogatory in addition to the four quoted in our original opinion, 304 F.2d at 71, 72. It must be remembered, however, that the district court did not require the jury "to return only a special verdict in the form of a special written finding upon. *each issue of fact"* as permitted by Rule 49 (a), Fed.R.Civ.P., but, instead, followed the procedure outlined in Rule 49(b) to "submit to the jury, together with appropriate forms for a general verdict, written interrogatories *upon one or more issues of fact* the decision of which is necessary to a verdict." It appears from the district court's charge to the jury that the written interrogatories were not intended to cover each and every issue of fact, but, "they are interrogatories which counsel described in their arguments, seeking to find from you your opinion on *certain factual matters* that have occurred in this trial." (Emphasis supplied.) It undoubtedly is true that the interrogatories submitted what the parties then considered to be the prime or important issues of fact, but, in the absence of any other evidence of waiver, and in the light of that part of the court's charge submitting the issue of reasonableness to the jury, which has been quoted, supra p. 4, we conclude that the defendant is not foreclosed from urging that issue on another trial. As said in Moulor v. American Life Insurance Co., 1884, 111 U.S. 335, 337, 4 S.Ct. 466, 467, 28 L.Ed. 447, the defendant's "willingness, at one trial, to risk its case before the jury, upon a single one of several issues made, did not preclude it, at a subsequent trial, from insisting upon other defences, involving the merits, which had not been withdrawn of record or abandoned in pursuance of an agreement with the plaintiff." [1]

With much force, the plaintiffs urge that "relitigation of defendant's liability herein would be unusually onerous be-

---

1. To similar effect, see Chase v. United States, 1921, 256 U.S. 1, 10, 41 S.Ct. 417, 65 L.Ed. 801; Davis v. O'Hara, 1924, 266 U.S. 314, 321, 45 S.Ct. 104, 69 L. Ed. 303; 5 Am.Jur.2d Appeal and Error, § 955, p. 382, n. 12; 5B C.J.S. Appeal and Error § 1989, p. 637, n. 25.

cause of the enormous amount of time, energy, and money required." The former trial took ten days, most of the time being devoted to issues relevant to liability vel non. As said in our original opinion, "[t]he testimony at the trial was concerned principally with the issues of whether Mr. Green's death was caused by a cancer originating in the lung, that is, primary lung cancer, and whether that cancer was caused by his smoking of Lucky Strike cigarettes. Eight eminent medical doctors testified on each side." 304 F.2d at 72. A large part of the burden and expense necessary to be incurred by any of the parties may be obviated by observing that upon another trial, any party may introduce such part of the relevant evidence on the former trial as may be desired.

■ Further, while the general verdicts for the defendant are vacated, the parties are nonetheless bound by the jury's answers to the written interrogatories. The answers to (1), (2) and (3) (304 F.2d 71, 72) will be directly pertinent upon another trial. The parties may not re-litigate the issues thus already decided under the guise of presenting evidence on the issue of reasonableness, that is, as to whether the cigarettes were *reasonably* fit and wholesome. The evidence to be adduced on that issue must assume as already conclusively established the issues decided by interrogatories (1), (2) and (3).

While the answer to interrogatory (4) no longer has any relevance to the question of defendant's liability, it does, in our opinion, effectively foreclose another issue which the defendant now urges; that is, that "plaintiff would have to satisfy the jury * * * that Mr. Green purchased Lucky Strike cigarettes 'in reliance upon' defendant's implied warranty."

The element of "reliance" in implied warranty liability is touched upon by the Supreme Court of Florida in its response, 154 So.2d at 172, 173. It is said that this liability is related to "the reliance by the buyer on the seller's judgment." Reference is made to an article by Dean Prosser in which he says: "The only 'reliance' which it involves is reliance upon the seller's undertaking, as it is reasonably understood by the buyer." The opinion refers also to the decision in Lambert v. Sistrunk, Fla.1952, 58 So.2d 434, denying a merchant's liability for sale of a defective stepladder. In that case the Florida Court drew the distinction between the class of cases where the buyer relies on the seller's judgment and those in which there is no reliance, as follows:

"There is no need to dwell on the class of cases where the buyer relies upon the seller's judgment of the fitness of a particular article for the purpose intended, because the use of a stepladder is as well known to a buyer as to a seller and is as limited as it is well known. This feature is common to the lipstick involved in Smith v. Burdine's, Inc., supra [144 Fla. 500, 198 So. 223, 225, 131 A.L.R. 115]. The difference, as we have already observed, is in the nature of the articles sold. One cannot know the ingredients of a lipstick without chemical analysis. One can know as much as a salesman of a stepladder by simply looking at it. And this lack of opportunity to inspect was also a factor in the case of Blanton v. Cudahy Packing Co., supra [154 Fla. 872, 19 So.2d 313]." Lambert v. Sistrunk, supra, 58 So.2d 435.

Again the response of the Supreme Court of Florida in this case states that " * * * the basis of such liability is the undertaking or agreement, attributed by law, to be responsible in the event the thing sold is not in fact merchantable or fit for its ordinary use or purposes." 154 So.2d at 171. While the response advises that " * * * manufacturer's or seller's actual knowledge or opportunity for knowledge of a defective or unwholesome condition is wholly irrelevant to his liability on the theory of implied warranty * * * " (154 So.2d at 170), it would appear that the buyer is assumed to rely upon the seller's judgment in cases where the buyer neither knows nor

has an opportunity to know of the unfitness or unwholesomeness. In such cases there is an undertaking or agreement on the part of the seller to be responsible in the event the cigarettes (to be specific) are not in fact reasonably wholesome or fit for human consumption.

It would be obviously impossible for the plaintiffs to prove any conscious or express reliance by Mr. Green on defendant's implied warranty. What the evidence does establish, and what the jury has in effect found, is that the circumstances of this case are such that it must be assumed that Mr. Green purchased the Lucky Strike cigarettes "in reliance upon" the defendant's implied warranty. That is no longer an issue in this case.

Finally, pointing to plaintiffs' requested instruction No. 10, the defendant insists that before finding for the plaintiffs, the jury must find that the cigarettes caused injury "while being used in a normal manner." A plea of contributory negligence is obviously inapposite to a claim based on breach of implied warranty. However, an implied warranty encompasses only the ordinary use or purposes for which the article is sold. It seems to us that Mr. Green's smoking of the Lucky Strike cigarettes, as described in our original opinion (304 F.2d at 72), even to the extent of from one to three packages per day, was so clearly a matter to be expected among many smokers, and within the use or purposes for which the cigarettes were sold, as not to leave this element as a real issue in the case, unless on another trial a different state of facts is presented.

We believe that we have discussed all of the remaining issues suggested by the defendant. We have done so in the hope of more sharply defining the issues yet to be decided. It is our purpose, however, to aid, and not to limit more strictly than necessary the judgment and discretion of the district court. In simple summary, the parties are bound by the answers to the four interrogatories; any issue not inconsistent with those answers may be presented upon another trial. What has been said should be a sufficient guide for the district court, by further pretrial hearing or otherwise, to keep the issues within proper limits.

The judgments are reversed and the case remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

CAMERON, Circuit Judge (concurring in part and in part dissenting).

The majority opinion in this case is a careful and accurate portrayal of the status of the case as it now stands before us. And it is a correct interpretation of the holding of the Supreme Court of Florida so far as it holds that the judgments of the court below must be reversed and the case remanded. I cannot join, however, in its conclusion that we should not render judgments for plaintiffs on the issue of liability.

## I.

For convenience, I quote the paragraph of the majority opinion which announces this latter conclusion—the point at which I am compelled to part company with my brethren:

"It does not, however, follow, as urged by the plaintiffs, that we should render judgments for plaintiffs on the issue of liability. The jury has not made any sufficient finding on the question of reasonableness, that is, as to whether or not the cigarettes were '*reasonably* fit and wholesome.' The jury did find that the smoking of Lucky Strike cigarettes on the part of the decedent, Green, was a proximate cause of the development of cancer in his left lung which caused his death. It is possible, however, that those findings are consistent with the standard of reasonableness, for as this Court recently said: 'Strict liability on the warranty of wholesomeness, without regard to negligence, "does not mean that goods are warranted to be foolproof or incapable

of producing injury * * *"' Lartigue v. R. J. Reynolds Tobacco Company, 5 Cir. 1963, 317 F.2d 19, 37."

In order to demonstrate that Lartigue is not authority in this case, and that the majority fell into fatal error when it announced the foregoing quoted language as the basis for its conclusion that the plaintiffs were not entitled to a directed verdict on liability, it is necessary to set out substantially all of the paragraph in Lartigue, a portion of which the majority has quoted above. This is done in a footnote, and the textbook language which Lartigue quoted is italicized to separate it from this Court's language (317 F.2d 37, paragraph numbered [18].[1] Lartigue was quoting from a textbook based upon a California Appellate Court case which announced law which is wholly inconsistent with the law of Florida.

It is fair to say, I think, that the majority's entire reliance on Lartigue and the principles it stands for are in direct conflict with the decisions of Florida courts, including the specific holding of its Supreme Court in its answer to the question we certified to it (154 So.2d 169, 172–173).

## II.

The majority here finds itself, I submit with deference, in the anomalous position of resting its decision as to the most crucial point in this case upon Lartigue, which in turn went astray because

it bottomed its holding on the portion (304 F.2d at 73–77) of this Court's original opinion which was rejected by the Florida Supreme Court. upon our submission to it. The vital language of Lartigue (317 F.2d 37–39) was based upon, and in considerable part repeated, these rejected holdings of this Court's original opinion.

It follows, it therefore seems to me, that whatever may be the force of Lartigue—decided two months before the Florida Supreme Court answered our question—in deciding a Louisiana case, it is no authority at all in this case based upon Florida law. Under that law it is not true that "By and large, the standard of safety of the goods is the same under the warranty theory as under the negligence theory." The direct opposite is true. The instruction given by the court below and its accompanying Question No. 4 were predicated directly upon the negligence theory. Florida rejects that theory and holds that sales of goods for human consumption are not covered by the law of sales with its *caveat emptor* or the law of negligence with its doctrines of reasonable care. Instead, they are controlled entirely by the law of contracts. The contract here was between the Tobacco Company and Green. The warranty embodied by the law in every sale the Company made to him was that the cigarettes purchased by him would not do him harm.

1. "Strict liability on the warranty of wholesomeness, without regard to negligence, *'does not mean that goods are warranted to be foolproof or incapable of producing injury * * * By and large, the standard of safety of the goods is the same under the warranty theory as under the negligence theory.*[37]' The article sold must be unreasonably dangerous to the ordinary consumer, with the knowledge common to the community as to its characterization. For example, sugar is unwholesome to diabetics. Ice cream and butter may contain sufficient cholesterol to be unwholesome to persons with high blood pressure and heart trouble. Whiskey is unwholesome to alcoholics. Diabetics who eat sugar, heart cases who cannot resist ice cream or butter, and alcoholics who drink too much whiskey know that the strict warranty of wholesomeness puts no money in the bank for them.

* * *

"37. 2 Harper & James, Law of Torts § 28.22, p. 1584 (1961).

" *'In a recent California case the Court said "The essential inquiry, thus, is the same in respect to the breach of warranty theory as to the negligence claim: whether the defendant complied with the standard of reasonable care in ascertaining the fitness of the chattel for the use for which he knew it was hired."* Tierstein v. Licht, 1959, 174 Cal.App.2d 835, 345 P.2d 341.'"

It would, in my opinion, be a complete rejection of the law of warranty to hold that it could abrogate the requirement that one admittedly injured by the use of tobacco could not recover unless he showed further that the cigarettes were not reasonably fit and wholesome for use by the general public. Those words are used in the warranty to demonstrate the universality of its application. Every sale it makes carries a warranty to each and every member of the public. But each warranty is separate and covers the liability of the Tobacco Company to each separate individual to whom a sale is made. The finding of the jury has settled the fact that the cigarettes sold to Green were not reasonably fit and wholesome for use by him. No other question is, in my opinion, involved under the law of Florida with which alone we are dealing.

### III.

The question here under consideration is, in reality, the same question which was debated at great length between the majority and the dissenting opinions in the initial decision of this case by this Court.[2] A reading of those two opinions will, it seems to me, cover essentially the point of difference which still persists between the majority and myself. I think no good purpose will be served by repeating the argument made in that dissent and that it is sufficient to refer to it. I undertook to analyze every applicable Florida case and to demonstrate that under the Florida cases, Question No. 4 should not have been submitted to the jury. The Supreme Court of Florida has decided the point submitted against the holding of the majority in that case and in favor of the arguments set forth in my dissent.

In answer to the question we addressed to the Supreme Court of Florida, which the parties stipulated as encompassing the question which would decide the outcome of this litigation, the Supreme Court of Florida answered in effect as follows:

"Yes, the law of Florida imposes on a manufacturer and distributor of cigarettes absolute liability, as for breach of implied warranty, for death caused by using such cigarettes from 1924 or 1925 until February 1, 1956, the cancer having developed prior to February 1, 1956, and the death occurring February 25, 1958, notwithstanding the fact that the defendant manufacturer and distributor could not, on or before February 1, 1956, by the reasonable application of human skill and foresight, have known that users of such cigarettes would be endangered, by the inhalation of the mainstream smoke from such cigarettes, of contracting cancer of the lung."

It seems certain that, when we submitted that question, the members of the Court thought its answer would dispose of the case. The parties evidently thought the same thing, because they agreed to the asking of this question. I see nothing else for the jury to pass upon, unless the Tobacco Company is to be permitted to bring in a hundred or a thousand witnesses whom Lucky Strike cigarettes have not yet harmed, in an effort to show that the warranty given by the Tobacco Company to Green was not in fact broken.

But the record before us reveals no effort by either party to show that the cigarettes were not reasonably fit and wholesome as to any person besides Green. If that be the thrust of the majority opinion, I think it is fair to say that neither party raised such an issue in the arguments before us on the trial of the original appeal; that this Court never conceived that such an issue was in the case; that the Supreme Court of Florida has not intimated that such an issue does remain in the case, and that no Florida decision is cited—and none can be found by me—which holds such an issue to be relevant to a trial upon implied warranty.

2. Green v. American Tobacco Company, June, 1962, 304 F.2d 70, dissenting opinion, 77.

682

The law seems to be settled that:

"In civil cases it is a well-recognized rule that questions not advanced on the original hearing will not be considered on the petition for a rehearing * * *" 5 Am. Jur.2d, Appeal and Error, § 987, page 412.

I think that the judgment below should be reversed and remanded for trial of the issue of damages alone. I, therefore, respectfully dissent.