JEAN EVANS, Plaintiff-Appellant, *v.* NORTHERN ILLINOIS BLOOD BANK, INC. *et al.*, Defendants-Appellees.

(No. 72-168;

Second District—July 10, 1973.

J. Daniel King, of King & McNamara, of Rockford, for appellant.

Williams, McCarthy, Kinley, Rudy & Picha and Sype & Kaliveda, both of Rockford, for appellees.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

Plaintiff has appealed the dismissal of her complaint which alleged strict liability in tort for the action of the defendants in furnishing blood that was defective in that it was incompatible. The trial court in its order of dismissal held that the complaint failed to state a cause of action. No evidence was taken. At the outset it is to be expressly noted that the discussion herein contained applies only to those actions arising prior to the effective date, July 2, 1971, of Ill. Rev. Stat. (1971), ch. 91, sec. 181-183.

In *Cunningham v. Mac Neal Memorial Hospital* (1970), 47 Ill.2d 443, 266 N.E.2d 897, the Supreme Court of Illinois held that a hospital which supplied defective blood to a patient who subsequently contracted serum hepatitis therefrom was engaged in the business of selling blood for transfusions within the doctrine of strict tort liability. The Supreme Court rejected the contention followed in a number of states that this was a service rather than a sale. Apparently, as a result of this decision the legislature in 1971 enacted an act declaring as a matter of public policy that the furnishing of blood for transfusions was a service and not a sale. (Ill. Rev. Stat. (1971), ch. 91, secs. 181-183.) The legislature thus limited any recovery to instances of negligence or wilful misconduct as a matter of public policy. The trial court properly held that the legislative determination contained therein was not applicable to the case at bar in that its effective date antedates the initiating of this action. This is the well-settled rule of statutory construction that:

"* * * Retroactive legislation is not favored, and as a general rule statutes are construed to operate prospectively unless the legislative intent that they be given retroactive operation clearly appears from the express language of the acts, or by necessary or unavoidable implications." *United States Steel Credit Union v. Knight* (1965), 32 Ill.2d 138, 142, 204 N.E.2d 4, 6.

Plaintiff, Jean Evans, alleges that while a patient at Swedish-American

Hospital Association, Inc. (hereinafter referred to as Hospital), in October, 1966, she received a transfusion of blood which was supplied by the Northern Illinois Blood Bank (hereinafter referred to as NIBB). This transfusion was administered by agents of the hospital and contained Kidd B antigen. Prior to this transfusion plaintiff's system contained no antibodies which were sensitive to Kidd B antigen. During May, 1968, plaintiff entered the hospital for an operation. In connection therewith, plaintiff again received a blood transfusion administered by agents of the hospital, such blood being supplied by NIBB. The blood received contained Kidd B antigen, this being incompatible with the Kidd B antibodies set up in plaintiff's blood as a result of the 1966 transfusion. The foregoing combination of Kidd B antigen with Kidd B antibodies brought about a transfusion reaction necessitating immediate medical procedures to cope therewith. As a result of the above two transfusions, plaintiff may not have future transfusions unless the blood used is free of Kidd B antigen.

The plaintiff contends that the blood transfusion received by her at the hospital was in an unreasonably dangerous condition, it was defective in that it was incompatible, such condition existing at the time the blood left the control of NIBB, and this unreasonably dangerous condition of the blood was the direct and proximate cause of serious injury to plaintiff.

■■ The plaintiff in her original complaint alleged three counts: (1) breach of warranty, (2) negligence, and (3) strict liability against both the hospital and NIBB. Subsequently, the complaint was amended to a two-count amended complaint respectively against the hospital and NIBB based upon strict liability in tort. The leading case on strict liability in Illinois is *Suvada v. White Motor Co.* (1965), 32 Ill.2d 612, 623, 210 N.E.2d 182, 188:

> "* * * The plaintiffs must prove that their injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control. See *Tiffin v. Great Atlantic and Pacific Tea Co.*, 18 Ill.2d 48."

In *Suvada* the court also discussed and cited section 402A of American Law Institute's revised Restatement of Torts approved in May, 1964.

The plaintiff relies principally upon the *Cunningham* case (47 Ill.2d 443) to support her right to recovery under the strict liability doctrine. We do not believe that *Cunningham* is authority for the principle that the plaintiff herein has stated a cause of action in her amended complaint. In *Cunningham* the court stated in discussing the complaint therein, at page 457:

"* * * It is alleged therein that a product (blood) was sold or supplied, for consideration, to the plaintiff by an enterprise which is in the business, albeit incidentally with regard to its principal function, of supplying such product, that the product contained a defect (serum hepatitis virus) at the time it left the hands of the hospital which rendered it unreasonably dangerous to the plaintiff, a consumer, and which proximately caused physical damage to her. All of the requirements set forth in *Suvada* have thus been met."

In her complaint plaintiff alleges that the blood was defective in that it was incompatible. The argument of the plaintiff stated in another fashion is that it was defective not because it contained any impurity, but defective because it was incompatible as containing Kidd B antigens. The blood was, in fact, wholesome. Plaintiff has cited *Davis v. Wyeth Laboratories Inc.* (1968), 399 F.2d 121, in support of this position. We do not believe that that case is applicable. In *Davis* the plaintiff was administered polio vaccine by the Public Health authorities in the town of West Yellowstone, Montana. The administration was performed in a mass immunization clinic and dispensed by a pharmacist. The drug was a prescription drug to be dispensed only by a physician. Davis, after receiving the polio shot, became paralyzed from the waist down. The court reversed the decision of the trial court and held at page 128:

"* * * Here the fact that a product is dangerous does not result in strict liability if, on balance, public interest demands that it be made available notwithstanding its dangerous characteristics."

and further held at page 129:

"There are many cases, however, particularly in the area of new drugs, where the risk, although known to exist, cannot be so narrowly limited and where knowledge does not yet explain the reason for the risk or specify those to whom it applies. It thus applies in some degree to all, or at least a significant portion, of those who take the drug. This is our case; there seems to be no certain method of isolating those adults who may be affected adversely by taking Type III Sabin vaccine.

In such cases, then, the drug is fit and its danger is reasonable only if the balance is struck in favor of its use. * * * [T]he drug can properly be marketed only in such fashion as to permit the striking of the balance; that is, by full disclosure of the existence and extent of the risk involved."

The laboratory in that case had actively taken part in the setting up of the mass immunization clinics and knew of the proposed method of

innoculation. The court then held that the defendant was strictly liable in tort for failure to warn the user or consumer of the possible danger in the use thereof. This case is not authority for the contention of the plaintiff herein that a wholesome product may be defective to certain individuals who would react thereto nonetheless. The *Davis* case turned solely on the failure to warn the user thereof of the possible danger.

The plaintiff has also cited *Zirpola v. Adam Hat Stores* (1939), 122 N.J.L. 21, 4 A.2d 73, and *Reynolds v. Sun Ray Drug Company* (1947), 135 N.J.L. 475, 52 A.2d 666. Both of these cases were brought upon breach of an implied warranty by the defendant, not upon a strict liability theory, and the court held that whether there was a breach of implied warranty to the somewhat small number of the users of the product who would be harmed thereby was a matter for the jury. That, however, is not the theory of the case before us. The plaintiff chose to proceed on the strict liability theory herein, and while it may be contended that this is a question of semantics, the difference between the furnishing of whole blood by a hospital and a blood bank and the use of a drug or product sold in the open market having a harmful effect on certain individuals, is not analogous. These cases in substance, hold that a manufacturer may be held liable under a breach of implied warranty or negligence and not that he should be held liable under the doctrine of strict liability.

Likewise, we do not feel that the other cases cited by plaintiff covering contaminated food products are applicable herein. No useful purpose would be served in discussing the question of transfusions of incompatible blood arising in other jurisdictions. Those cases, varying from State to State, are primarily based on the doctrines of *res ipsa loquitor*, negligence or breach of warranty. The only case that we are conversant with dealing with strict liability in tort in the furnishing of incompatible blood is that of *Baptista v. Saint Barnabas Medical Center* (1971), 57 N.J. 167, 270 A.2d 409, affirming 109 N.J.Super. 217, 262 A.2d 902, cited by defendants. There, the New Jersey court held as a matter of policy that the furnishing of alleged incompatible blood did not give rise to an action under strict liability or breach of warranty. However, this ruling was based, as counsel for plaintiff points out, on the doctrine that the furnishing of blood is a service, not a sale, which is not the situation in the case before us.

Plaintiff would have us extend the doctrine enunciated in *Cunningham*, *i.e.*, the hospital is liable under the doctrine of strict liability for the furnishing of blood containing a foreign substance, to-wit: serum hepatitis, to the situation where the blood is "defective in that it was incompatible."

■■ We hold that the trial court was correct in stating that the complaint "as amended, fail[ed] to state a cause of action against the respective defendants therein, for the reason that said counts purport to state a cause of action based on strict liability, but the allegation of blood incompatibility does not constitute a defect in the blood, the product in question."

The judgment of the trial court is affirmed.

Affirmed.

SEIDENFELD and T. MORAN, JJ., concur.