521 P.2d 787 (1974)
Margaret E. SCHMALTZ, Plaintiff-Appellant,
v.
ST. LUKE'S HOSPITAL, a Colorado corporation, Defendant-Appellee.
No. 73-090.
Colorado Court of Appeals, Div. II.
March 5, 1974.
Rehearing Denied March 26, 1974.
Certiorari Granted May 13, 1974.
*788 Mason, Reuler & Peek, P. C., Maurice Reuler, Denver, for plaintiff-appellant.
Wood, Ris & Hames, P. C., Eugene S. Hames, Denver, for defendant-appellee.
Selected for Official Publication.
PIERCE, Judge.
Plaintiff filed a complaint in the district court alleging four claims for relief arising out of her contraction of serum hepatitis after receiving a blood transfusion at the defendant hospital. The complaint set forth four theories for relief: negligence; strict liability in tort; res ipsa loquitur; and express and implied warranty. Defendant filed a motion to dismiss the second, third, and fourth claims for failure to state a claim upon which relief could be granted. This motion was granted, leaving for trial only those issues presented by the first claim for relief based on negligence. Plaintiff then elected not to pursue the negligence claim and stipulated to the dismissal of that claim with prejudice. Plaintiff now appeals from the order of the court dismissing the other three claims for relief.
The plaintiff alleged in support of each claim for relief that while she was a patient in the defendant hospital she received without her knowledge or consent a number of whole blood transfusions and *789 that approximately one month later she was readmitted to the hospital suffering from serum hepatitis which she had contracted from contaminated blood used in the transfusions. As we are considering a motion to dismiss, we must assume that the material allegations of the complaint are true, Millard v. Smith, 30 Colo.App. 466, 495 P.2d 234.
We conclude that the trial court properly dismissed the res ipsa loquitur claim, but we hold that it was error to dismiss the strict liability and breach of warranty claims.
Before discussing the applicable law regarding these three issues, we wish to point out that our discussion and rulings with regard to warranty and strict liability pertain only to the law and the public policy in effect in this state at the time the facts in this case occurred. See Evans v. Northern Illinois Blood Bank, 13 Ill.App.3d 19, 298 N.E.2d 732. The Colorado legislature has since enacted a statute declaring the present public policy of this state and limiting the legal liability of a defendant such as the one before us to cases where the negligence or willful misconduct of the defendant can be proved. 1971 Perm. Supp., C.R.S.1963, 41-2-11(1).

I RES IPSA LOQUITUR
One of the essential elements in proving a res ipsa loquitur case is that the occurrence which results in injury must be of a kind which ordinarily does not occur in the absence of defendant's negligence. Hook v. Lakeside Park Co., 142 Colo. 277, 351 P.2d 261. Furthermore, where two equally plausible inferences can be drawn as to the likelihood of negligence being or not being the cause of plaintiff's injury, res ipsa loquitur cannot be applied. McGee v. Heim, 146 Colo. 533, 362 P.2d 193. The parties have conceded that there is no proven method of detecting hepatitis virus in whole blood. Therefore, no presumption that the hospital was negligent can be drawn solely from the fact that the plaintiff contracted hepatitis following the transfusion. Joseph v. W. H. Groves Latter-Day Saints Hospital, 10 Utah 2d 94, 348 P.2d 935. We conclude that the trial court properly dismissed plaintiff's claim for relief based on the doctrine of res ipsa loquitur.

II WARRANTY CLAIMS
Defendant argues that public policy considerations preclude the imposition of liability under warranty theory since the hepatitis virus cannot be detected in the blood. While we acknowledge that the issue before us is primarily a question of public policy, Brody v. Overlook Hospital, 121 N.J.Super. 299, 296 A.2d 668, we disagree with defendant's conclusion. We find the rule of Gonzales v. Safeway Stores, Inc., 147 Colo. 358, 363 P.2d 667, applicable to the facts of this case. In that case, plaintiffs sued for breach of express and implied warranties alleging that peas purchased from the defendant in a sealed container were unfit for human consumption. The supreme court stated:
"We recognize the general rule to be that a retailer who sells unwholesome food for human consumption is liable to the customer for the consequences under an implied warranty imposed by law as a matter of public policy, even though the food is in sealed containers bearing the label of the manufacturer and the retailer has no means of knowing that the contents are unfit for human consumption." (Emphasis added.)
We find no reasonable distinction between the physical or practical impossibility of detecting a dangerous condition and the inability to do so under the present state of medical and scientific knowledge. See Green v. American Tobacco Co., 154 So.2d 169 (Fla.).
Furthermore, we find no reason to differentiate between cases involving food for human consumption and those involving whole blood which is transfused into the human body. As stated by Justice Roberts, *790 concurring specially in Community Blood Bank, Inc. v. Russell, 196 So.2d 115 (Fla.):
"These decisions [Florida cases similar to Gonzales] stand for the proposition that the seller of a product intended for human consumption is liable for injurious consequences resulting from the consumption of a defective or adulterated product, even though it was at the time of sale and consumption ... practically or scientifically impossible to discover the defect in or adulteration of such product."
See, e. g., Sencer v. Carl's Market, 45 So. 2d 671 (Fla.); Blanton v. Cudahy Packing Co., 154 Fla. 872, 19 So.2d 313; Wagner v. Mars, Inc., 166 So.2d 673 (Fla.App.). Justice Roberts then noted the similarity between the adulterated food and contaminated blood fact situations:
"There is a clear distinction between a product which is not adulteratedone which meets all the standards established for a particular product but which is attended with a known risk to the consumerand a product which is, in fact, adulterated and defectivethat is, which does not meet the standards established for this particular productand which would because of such unknown and undetectable defect, produce a harmful effect upon any consumer thereof.... [T]he product with which we are here concerned, [human blood] is in the latter category, along with canned meat, bottled drinks, candy sealed in a wrapper, and other similar products intended for human consumption." (Emphasis added.)
In the early hepatitis cases based on warranty theory, e. g., Dibblee v. Dr. W. H. Groves Later-Day Saints Hospital, 12 Utah 2d 241, 364 P.2d 1085, as in those based on strict liability, e. g., Perlmutter v. Beth David Hospital, 308 N.Y. 100, 123 N.E.2d 792, the courts tended to engage in semantic debates as to whether the furnishing of blood is a "sale" or a "service." Where, as here, the blood is supplied and a charge is made, we reject as unrealistic, the concept that the hospital is only furnishing a service, rather than selling a product. Cunningham v. MacNeal Memorial Hospital, 47 Ill.2d 443, 266 N.E.2d 897; modifying 113 Ill.App.2d 74, 251 N.E.2d 733; Russell v. Community Blood Bank, Inc., Fla.App., 185 So.2d 749 modified on other grounds 196 So.2d 115 (Fla.); Boland, Strict Liability in Tort for Transfusing Contaminated Blood, 23 Ark.L.Rev. 236; Sweatt, Serum Hepatitis Through Blood Transfusions: A Wrong Without a Remedy?, 24 S.W.L.J. 305.
We conclude that plaintiff's complaint stated a cause of action under C.R.S.1963, XXX-X-XXX, and that this claim for relief should not have been dismissed by the trial court.

III STRICT LIABILITY
Plaintiff's second claim for relief alleged that "as ancillary to the services rendered to the plaintiff, [defendant] sold and supplied her blood for the purposes of transfusion," that the blood so provided "was defective and in an unreasonably dangerous condition ... at the time it left the hands of defendant," and that defendant was therefore strictly liable to plaintiff for her alleged damages. Plaintiff argues that this claim for relief properly stated a claim under the doctrine of strict liability in tort as set forth in Restatement (Second) of Torts § 402A. We agree.
This court has recently adopted section 402A as law in Colorado. Bradford v. Bendix Westinghouse Automotive Air Brake Co., Colo.App., 517 P.2d 406. Section 402A provides:
"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer ... is subject to liability for physical harm thereby caused to the ultimate user or consumer ... if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and *791 does reach the user or consumer without substantial change in the condition in which it was sold.
(2) The rule stated in subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product...."
Our comments above regarding the "saleservice" distinction are equally applicable here. Thus, we conclude that the hospital is a "seller" of a "product" under section 402A. Cunningham v. MacNeal Memorial Hospital, supra.
Defendant argues that where it is incapable of protecting itself from liability by the exercise of due care, strict liability is inappropriate. This argument is contrary to the basic principle of strict liability law that the exercise of due care by a defendant is irrelevant. Green v. American Tobacco Co., supra; Cunningham v. MacNeal Hospital, supra; Brody v. Overlook Hospital, supra. Again, where there is a defect in the product, no legally significant distinction can be drawn between one who supplies blood and one who cans and distributes peas.
However, defendant further argues that the drafters of section 402A intended to exclude blood transfusion cases from the doctrine. It points to Comment k of section 402A which alludes to certain unavoidably unsafe products which do not come within the purview of section 402A. The comment illustrates by pointing to the fact that the vaccine for the Pasteur treatment of rabies sometimes leads to very serious and damaging consequences when used in a normal manner. Comment k, however, merely acknowledges that some products present a justifiable risk of harm even in the absence of a defect or some adulterating substance. They are, as the comment points out, neither defective nor unreasonably dangerous. We must assume on the basis of the allegations made in this case that the blood in question contained the hepatitis virus and was thereby a defective product, dangerous to all. We conclude that the "exception" provided in Comment k should be strictly construed and does not apply to this case. Cunningham v. MacNeal Memorial Hospital, supra; Community Blood Bank, Inc. v. Russell, supra. Cf. Gottsdanker v. Cutter Laboratories, 182 Cal.App.2d 602, 6 Cal.Rptr. 320, 79 A.L.R.2d 290.
Since the trial court erred in dismissing the second and fourth claims for relief, the case is remanded for further proceedings to resolve the issues presented by the pleadings on these two claims.
Judgment affirmed in that part dismissing plaintiff's third claim for relief; reversed in that part dismissing the second and fourth claims for relief. Cause remanded.
RULAND, J., concurs.
ENOCH, J., dissents.
ENOCH, Judge (dissenting):
I respectfully dissent from the majority opinion in its disposition of the claims based on warranty and strict liability.
I would agree with the majority that the determination as to what law applies to these claims is a question of public policy. Although when this case arose there was no legislative or judicial pronouncement of a public policy in Colorado on the issue in question, there is now a statute specifically enunciating a policy contrary to the majority opinion. 1971 Perm.Supp., C.R.S.1963, 41-2-11(1). Under such circumstances I question the logic of adopting a rule of law for this case that is contrary to this statute. It is my opinion that the public policy of this state, at the time the facts arose in this case, was, or should have been, in accord with the present statute.
The importance and necessity of the administration of blood transfusions to save human life is of such importance that certain risks must be assumed in hopes of attaining the usually beneficial results. In this respect, as a public policy matter, blood transfusions cannot be equated with *792 canned peas or other illustrations of unwholesome food as there is no compulsion that they be consumed in an effort to save human life. An even more important distinction between canned food and blood is the fact that the condition of prepared food can be controlled and tested to eliminate contamination whereas there is no presently known method of controlling or determining certain contaminating elements in whole blood.
It is my view that the better public policy and legal principles were established by Perlmutter v. Beth David Hospital, 308 N. Y. 100, 123 N.E.2d 792 rather than Cunningham v. MacNeal Memorial Hospital, 47 Ill.2d 443, 266 N.E.2d 897, modifying, 113 Ill.App.2d 74, 251 N.E.2d 733. While I realize that the Cunningham case is more recent and is currently more popular, I do not agree with the public policy it announces and would therefore hold that the Perlmutter rule was, or should have been, the rule in effect at the time this incident arose, and that the 1971 legislative action merely codified that existing public policy.
I would affirm the judgment.